## John Buehler

v.

## John C. Galt and W. R. Galt.

*Negotiable Instrument—Check—Delivery—Mailing—Recovery of—Cancellation—Proposition of Law—Agency.*

1. The making of a check and having the same certified by a bank passes no title to the funds on which the check is drawn to the person named as the payee thereof, until delivery.

2. The title to a check, not mailed at the request of the payee or drawee, remains in the sender during its transmission.

3. It being shown that under the postoffice regulations the sender of a letter may, before delivery thereof, regain possession of the same, the presumption will be, in the absence of evidence to the contrary, that such possession in a given case was through lawful means.

4. This court will take judicial notice of postoffice regulations.

5. Delivery of an instrument is not presumed from the fact of its execution. While the maker retains the custody of the instrument, the inference is that it has not been delivered; and unless there is evidence to put a party on notice that it has been delivered, he may legally deal with the instrument, on the assumption that it has never passed from the custody of the maker.

[Opinion filed January 22, 1889.]

Appeal from the Circuit Court of Cook County; the Hon. Richard W. Clifford, Judge, presiding.

Appellees were co-partners doing business in New York; Doering & LeClair were partners in the galvanized iron business in Chicago, and as such partners became indebted to appellees, for which indebtedness appellees held the firm's acceptance, which was overdue and had gone to protest. In the forepart of April, 1888, Doering & LeClair dissolved partnership, and as a part of the agreement of dissolution a check drawn by Doering on appellant as banker, payable to John Gault & Son, the appellees, for $417, was placed in the hands of one Walther, who was acting as attorney for both Doering

and LeClair in the matter of the dissolution, for the purpose
of having it transmitted to appellees in payment of the indebt-
edness due them from said firm. Walther presented the
check to the appellant's bank, and had the same certified, and
afterward inclosed it in a letter, written by him, and placed in
an envelope addressed to appellees, and on April 14th depos-
ited the letter in a United States mail box in Chicago, in
presence of both Doering and LeClair.

The letter was in the name of Doering, and stated that the
check inclosed was to settle the demand of Galt & Son against
Doering & LeClair. Shortly after the mailing of the letter
one McCamly, the agent of appellees, was in Chicago, and had
a telegram from appellees, telling him that the note was pro-
tested, and directing him to see the firm about it, and he did
see Doering, and was told by him that the check had been
sent to appellees. In about ten days McCamly heard from
appellees that the check had not been received by them, and
then he called on LeClair about it, and upon inquiry the
letter was traced to the postoffice as having been mailed to
New York, and by return mail to Chicago.

About April 21, 1888, Doering produced the check in
question at the bank, and asked that it be canceled, and that
he be re-credited with the amount, which was done, the bank
taking the check into its possession. The bank had no knowl-
edge as to what had been done with the check after it was
certified, and asked Doering no questions when it was pre-
sented for cancellation. Doering subsequently drew out the
amount of the re-credit which had been given him on the
cancellation of the check. On the trial, which was by the
court, the jury being waived, there was a finding for the
appellees, and judgment thereon.

Messrs. GOLDZIER & RODGERS, for appellant.

The rule is that "a check has no validity until actually
delivered to the payee." Bolles on Banks, Sec. 60; Cowing
v. Altman, 71 N. Y. 435; National Bank v. Strang, 72 Ill.
559.

What is here called delivery is also comprised in the term
of "issuing" a check. And the rules governing checks in

that respect are laid down as follows: " As promissory notes and deeds require delivery to complete their validity as between the immediate parties to the same, so also does a check require delivery or as it is more commonly called, ' issuing.' It is said that a check is issued when it is in the hands of any person entitled to demand cash for it." Morse on Banks and Banking, Sec. 390; Grant on Bankers, page 16; Ex parte Bignold, 1 Deac. 735.

Thus, where a parcel containing negotiable instruments was left in charge of a servant addressed to the payee with directions to deliver to the postman, it is not a delivery. Rex v. Lambton, 5 Price, 428.

So also, if it is placed by the drawer or maker in the hands of his agent for delivery, it is still undelivered as long as it remains in his hands and may be recalled. Daniel on Neg. Insts. Sec. 63; DeVries v. Shumat, 53 Md. 216.

Messrs. HOYNE, FOLLANSBEE & O'CONNOR, for appellees.

MORAN, J. The making of a check, and having the same certified by a bank, passes no title to the funds on which the check is drawn to the person named as payee of the check. Until the check is delivered, no right accrues by virtue thereof to the payee. Was this check ever delivered to appellees? The placing of the check by Doering in the hands of Walther, to be forwarded to appellees, does not constitute a delivery, because Walther was not the agent of appellees, but of Doering; and there was no time, up to the moment when it was deposited in the mail box, when Doering might not have had it returned to him, on his demand.

In depositing the letter in the box Walther was acting for Doering, for the letter was in Doering's name, and states that the check is sent to pay appellees, because by his agreement with LeClair he is to pay the note. The delivery, then, if there was one, consisted in depositing the check in the mail box, inclosed in the letter addressed to appellees. This did not, in our opinion, constitute a delivery of the check to appellees, under the facts of this case. If this check had been

mailed to appellees by their direction or in response to their request, for the purpose of paying the note which they held, there would no doubt be good ground for saying that the title thereto passed to them when it was mailed, and that the deposit in the mail box would constitute a delivery. But there is in this case no claim that appellees requested or directed the forwarding of this check, or that it was drawn or mailed with their knowledge. The rule stated in Morse on Banking, Sec. 305, and which seems to be founded in reason and based on respectable authority, is as follows: "The title is in the sender until the check comes to the hands of the drawee, unless the latter has requested the sender to forward money to him by mailing check; in that case, the title vests in the drawee when the check is placed in the mail, according to his directions. Talbot v. Bank of Rochester, 1 Hill, 295; Graves v. The American Exch. Bank, 17 N. Y. 207.

Appellees contend the delivery of a note or deed is complete when the maker or grantor has parted with his dominion over it, with intent that it shall pass to the grantee or payee, and they cite the case of Kirkman & Luke v. The Bank of America, 2 Caldwell, (Tenn.) 397, where the title to a note which was lost in the mail, was held to vest in the payee from the time it was deposited for transmission. The facts of the case show, however, that the note was deposited in the mail with three other notes, under an agreement that notes indorsed were to be forwarded to the payees, but no particular indorsers were agreed upon, and the only question open was whether the payees would assent to the indorsers. It further appeared that when the payee learned of the loss they procured a duplicate and took steps to collect the note. The case stands on its own peculiar facts.

In this case it is not to be assumed that Doering parted with dominion over the check by depositing it in the street letter box. We are bound to notice judicially the postoffice regulations, as well those which authorize the sender of the letter to stop its transmission at any point before it has reached the hands of the person to whom it is addressed, and get it back into his own hands, upon complying with certain condi-

tions, as the rule which makes the deposit of a letter in a mail box on the street corner a mailing of the same.    See Laws and Regulations of Postoffice, Secs. 531 and 533.

It is not shown by the evidence how Doering regained possession of the letter and check, but these rules of the postoffice show a lawful method by which he may have done it, and in the absence of evidence showing the contrary, we are bound to presume that he did regain it in a lawful manner.

The principle already stated, that the title to a check not mailed at the request of the payee or drawee, remains in the sender during transmission, compels the assumption that the postoffice is to be regarded as the agent of the sender, and the effect of these regulations, giving, as they do, the sender power to stop and recall a letter sent, goes far to support that assumption, and to establish that the delivery of a letter into the hands of the postal authorities, is not in all cases to be regarded as a delivery to the one to whom it is addressed.

The effect of a somewhat similar regulation of the French postoffice was held in England to constitute the postoffice the agent of the sender, till the point was reached, after which the sender could not regain the letter from the postal authorities.    Ex parte Cote, In re Deveze, L. R. 9 Chy. App. 31.

We are then of opinion that in this case the postoffice was the agent of Doering, at all times from the deposit of the letter in the box, till its re-delivery in Chicago, and that at no time was the letter or check in the hands of the agent of appellees.    Therefore appellees never had title to the check, and were not entitled to maintain this action.    But upon the rule stated in appellant's fifth proposition of law, which the court refused, we think appellant's defense to the action was complete.    Said proposition was as follows:

" The court holds, as a matter of law, that the possession of a check by the drawer raises a presumption that it has not been delivered to the payee, and that unless notice of a different state of facts is brought home to the banker upon whom the check is drawn, he has a right to act upon that presumption and cancel the check on the application of the drawer."

Delivery of an instrument is not presumed from the fact of its execution. While the maker retains the custody of the instrument, the inference is that it has not been delivered, and unless there is evidence to put the party on notice that it has been delivered, he may legally deal with the instrument on the assumption that it has never passed from the custody of the maker. What principle is there that takes a certified check in the hands of the drawer out of this general rule?

We know of none, and must say, therefore, that the court below erred in refusing to hold said proposition of law. Abrams & Co. v. Union National Bank, 31 La. Ann. 61.

The judgment will be reversed and the case remanded.

*Reversed and remanded.*