NATIONAL WALL-PAPER CO. v. SIRE.

(Supreme Court, Appellate Division, First Department.  February 10, 1899.)

MECHANIC'S LIEN—CONSENT OF OWNER.

> A lessee in possession, who was to make all ordinary repairs, con-tracted for extensive repairs, and showed the work, as it progressed, to the owner, who admired it, and made no objection. The owner was frequently about the place, but the contractor never spoke to him, though he knew he was the owner, but he did not know the terms of the lease. The owner never gave any affirmative consent to the work, nor expressed to the contractor approval or adoption of it while it progressed. *Held*, that he did not consent to the work so as to bind himself under Mechanic's Lien Law 1885, § 1.

Appeal from special term, New York county.

Action by the National Wall-Paper Company against Meyer L. Sire and another. There was a judgment for plaintiff, and defendant Sire appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

A. I. Sire, for appellant.

H. B. Gayley, for respondent.

PATTERSON, J. From a judgment of foreclosure of a mechanic's lien rendered against the owner and the lessee of certain real property situate in the city of New York, the owner appeals. The premises belonged to the defendant Sire; and, upon the trial of the cause, the justice presiding decided that labor was performed and materials were furnished with the knowledge and consent of the owner (except as to certain rejected items), and that, consequently, his estate in the land was bound, under the first section of the mechanic's lien law of 1885, which makes provision for a lien when work is done and materials are supplied with the consent of the owner of property. The inquiry in this case is essentially one of fact, viz. did the owner, Sire, consent to the repairs and alterations made by the plaintiff, the lienor, upon the premises? Mr. Sire was not in possession of these premises at the time the plaintiff contracted to do the work, nor while it was in progress, but they were in the possession of the defendant Stranahan, his lessee. All ordinary repairs were to be made by the lessee. The plaintiff contracted with the lessee, and with no one else. The contract was negotiated by, and all the work done in pursuance of it was performed under the supervision of, one Allen. He knew that Stranahan was the lessee, and not the owner, but he did not know at the time the contract was made of the terms and conditions of the lease. He also knew that Sire was the owner of the property, and, as he testifies, he saw Sire frequently upon the premises while the work under the contract was being done; but he never spoke to him either upon the subject of the contract or of the work, and, indeed, he swears that he never spoke to him at all. Sire was in no way connected with the contract. It is not claimed or pretended that he ever gave any affirmative consent to the making of the contract; nor did he ever in any way express himself to any one connected with the plaintiff, as approving or adopting the work, while it was in progress.

Under those circumstances, the only way in which the consent required by the statute could be established was by inference, to be drawn from the acts, conduct, or declarations of the owner. There are many cases in the books illustrating the application of the word "consent," as used in mechanic's lien laws, where it has been sought to bind the interest of an owner. There is no definition sufficiently wide or comprehensive to include all cases, but the term "'with the consent of the owner,' as, used in the statute, implies that the owner has power to give or withhold his consent in respect to the construction, alteration, or reparation of the building." Vosseller v. Slater, 25 App. Div. 372, 49 N. Y. Supp. 478. An examination of the authorities under local statutes, as well as under the general law, will disclose that in each of them the element of consent, where it has depended upon an inference, has been made out, not from a general definition, but from the particular circumstances of each case. The current of decision is that, no matter in what form the consent of the owner is manifested, if it is shown that it existed, it is sufficient to give the persons furnishing labor or materials a good lien. Husted v. Mathes, 77 N. Y. 388. The consent required is said to be synonymous with "permission." Hackett v. Badeau, 63 N. Y. 476. That consent or permission implied from acts and declarations of an owner is as operative, and to the same extent, as if there were a direct contract between the owner and the lienor. Otis v. Dodd, 90 N. Y. 336. It has also been held that where one leases land, and agrees that the tenant may make improvements, which are to become the property of the owner at the end of the term, then an enforceable lien may be acquired. Burkitt v. Harper, 79 N. Y. 273. Each of those cases was decided upon facts peculiar to itself. See, also, Schmalz v. Mead, 125 N. Y. 188, 26 N. E. 251, and Miller v. Mead, 127 N. Y. 544, 28 N. E. 387. In those cases the inference of an accord of minds between the owner and the contractor was justified by the proofs. That there must be some sort of concurrence between the owner and the lienor would seem to be a necessary element, and that was explicitly decided under the Connecticut lien law (Huntley v. Holt, 58 Conn. 449, 20 Atl. 469), in a case in which the New York authorities above referred to were cited to the court. The Connecticut statute gives a lien where work is done or materials furnished "by virtue of an agreement with or by the consent of the owner of the land," etc. The court says:

"The words 'consent of the owner' are used in the statute as something different from an agreement with the owner; and, while it may be urged that they do not require such a meeting of the minds of the parties as would be essential to the making of a contract, there must be enough of a meeting of their minds to make it fairly apparent that they intended the same thing in the same sense. It cannot be supposed that the statute was designed to be made a cover for entrapping a party into a seeming consent when there was no real one."

Recent cases in the court of appeals show how this subject of consent is viewed by that tribunal. In Cowen v. Paddock, 137 N. Y. 193, 33 N. E. 155, it is said:

"While it is true that the consent required by the lien law need not be expressly given, but may be implied from the conduct and attitude of the owner

with respect to the improvements which are in process of construction upon his premises, still the facts from which the inference of the consent is to be drawn must be such as to indicate at least a willingness on the part of the owner to have the improvements made, or an acquiescence in the means adopted for that purpose, with knowledge of the object for which they were employed."

This general language shows that each case must be determined upon its own facts, and point and significance is given to it by the remarks of Judge O'Brien in Spruck v. McRoberts, 139 N. Y. 199, 34 N. E. 897,—a case in which, by inference, the estate of an owner was sought to be subjected to a lien in favor of a contractor. It is there said:

"When a contractor, mechanic, or material man proposes to erect a building or to expend labor or material upon land under a contract with the person in possession, it is incumbent upon him to inquire, and to assure himself of the fact that the person with whom he contemplates making the contract, or for whose benefit he is about to employ labor or material, has in fact such an estate or interest in the land as will enable him to assert a statutory lien. If he fails to do this, or is mistaken in his calculations, and contracts with a person without title, the statute does not impress a lien upon the estate of the true owner, unless he is in some way connected with the contract, or has given his consent to the expenditure in such manner as to bind him within recognized principles of equity."

The true test is in the last clause of the sentence quoted. Has the owner given his consent in such manner as to bind him within recognized principles of equity? The foregoing remarks of Judge O'Brien are quoted with approval in Hankinson v. Vantine, 152 N. Y. 29, 46 N. E. 294, in which case it is said:

"It seems that the requirements of this statute as to consent are not met by a mere general agreement to the effect that a third person may at his own expense make alterations in a building occupied by him. The statute requires more. It requires either that the owner shall expressly consent to the particular alterations made, or that, with a knowledge of the particular object for which they are employed, he acquiesces in the means adopted for that purpose."

In the case last cited there was a general consent given by the owner that repairs should be made, but that was all. The trial court adjudged that there was a valid lien against the interest of the owner, but the judgment was reversed in the court of appeals, that court holding that there was nothing in the circumstances of the case which showed consent to the particular work done upon the premises involved in that suit.

We have recently had occasion to consider this question of consent of an owner, in the case of De Klyn v. Simpson (decided Nov. 11, 1898) 54 N. Y. Supp. 345; and it was there held, on a review of the authorities, that, where a consent had been given to the making of particular alterations in a building, that consent cannot be extended, by inference, to additional alterations made by the same contractor, and in enlargement of the specific work consented to. We have, therefore, to consider, under the proofs in this case, whether it can be held that Mr. Sire consented to the work done by this plaintiff, so as to bind his estate. The contract with the lessee was entered into, and the work was undertaken and was performed, with full knowledge of the contractor that it was dealing only with a tenant.

The contractor knew who the owner was, and never approached him upon the subject of the work. The plaintiff practically ignored the owner, and proceeded to make the contract and do the work on the sole responsibility of the lessee. There is therefore no equity arising from any relation of the parties which should induce a court to subject the owner's property to a claim of a party who was content to rest upon his contract relations with the lessee, and who, having abundant opportunity to confer with the owner, failed to do so. True, the subjection of the owner's estate in the property to a lien does not rest in any way upon contract, but arises altogether from the statute. Nevertheless it is also true that a contractor is bound to take notice of the conditions under which a person is in possession of property, if he knows, as was the case here, that that person is not the owner. There never was the slightest intimation made to the plaintiff, or any one representing it, by Sire, that he consented to the work, or permitted it to be done or the materials to be supplied. All that there is in the case suggested as willingness on the part of Mr. Sire, or an adoption of the methods by which the contract between the plaintiff and Stranahan was carried out, is that he did not object, and some testimony of Stranahan, so vague and inconclusive as to make it unjust to use it as the basis of a judgment against the owner. This witness, called by the plaintiff, was asked:

"Q. What did you and Mr. Sire do after those rooms were decorated? A. I showed him the rooms, the decorations. Q. What did you and Mr. Sire do with regard to the rooms that were decorated [referring to those decorated by the National Wall-Paper Company]? What did you do about them? A. I took him up and showed him the rooms. Q. What did you say, and what did he say? A. I told him that those were the rooms that the National Wall-Paper Company had decorated. Q. What then? A. He said they were very nice,—something of that kind. I don't remember just what. I told him they were more economical and cheaper than the other decoraters, and I thought I would let the entire contract to them to decorate the house. Q. What did he say, if anything? A. He didn't say anything, that I remember. At the time this conversation took place between me and Mr. Sire, the contract had not been entered into with the National Wall-Paper Company. I have testified that I told him then that I was going to engage the National Wall-Paper Company to do the decoration of this hotel. After I made the contract, I told Sire I had made a contract with them. I think I said it was going to cost a lot of money, and that he ought to pay part of it. 'Well,' he said, 'I will see how well it is done.' That is all. I told him what it would cost. I told him about $8,000."

This witness then testified that while the work was in progress he went through the hotel with Sire. Being asked what Sire said "during these trips through the rooms while this work was being done by the plaintiff," he answered:

"I cannot testify to any conversation that occurred between us. Q. There was no conversation that took place particularly? A. Not that I remember. Q. What did he do? State what he did when he went in those various rooms with you? A. He didn't do anything. He examined the paper and the decorations, and admired the work."

The witness said in another place:

"I don't think I had any conversation with Mr. Sire in reference to the alterations which were to be made in the reception room, which is included in this contract, and as to the alterations which were to be made in the room."

It cannot legitimately be inferred from any of this testimony that Mr. Sire consented to these repairs and alterations being made, in such a way as to bind his interest in the property. All that was shown is that he was upon the property, and admired the work. He did know that it was being done under a contract with his lessee. He was not bound to interpose and prevent the plaintiff from carrying out its contract. No active duty of interference rested upon him. The most that can be said is that he remained passive. The active duty of inquiry was upon the contractor (Sprnck v. McRoberts, supra); and under the particular circumstances of this case, and the condition of the proof upon the subject, as the record comes before us, there was not sufficient to justify such an inference of consent as will bind the owner's estate to the lien asserted against it.

The judgment must therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.