No. 45,081

ROBERT D. SCHARZ, Superintendent, Division of Insurance, Department of Business and Administration, State of Missouri, *Appellant,* v. TWIN CITY STATE BANK, *Appellee;* HOME FIDELITY LIFE INSURANCE COMPANY, et al., *Defendants.*

(441 P. 2d 897)

Opinion filed June 8, 1968.

*John H. Fields,* of Kansas City, argued the cause, and *David W. Carson, John K. Dear, Ernest N. Yarnevich, J. W. Mahoney,* and *Joseph T. Carey,* all of Kansas City, and *I. I. Ozar,* of Kansas City, Mo., were with him on the brief for the appellant.

*William H. Leedy,* of Kansas City, Mo., argued the cause and *J. Willard Haynes,* of Kansas City, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: At issue here is the right to the proceeds of a cashier's check.

Appellant is superintendent of the Division of Insurance, Department of Business and Administration of the state of Missouri. In this capacity he commenced this action against appellee Twin City State Bank September 24, 1965, under authority of an order of the Circuit Court of Cole county, Missouri, directing him to take charge of the property of the Home Fidelity Life Insurance Company, an insolvent Missouri corporation.

For present purposes the subject of the action below was a $5,000 cashier's check drawn by appellee bank and held by it, which was made payable to appellee and to the insurance company.

The facts, which are not disputed, may be briefly summarized: March 12, 1965, the Home Fidelity Life Insurance Company borrowed $20,000 from appellee. This indebtedness was evidenced by

what is described as a collateral form note due June 12, 1965, and was secured also by a second deed of trust covering a tract of land in St. Louis, Missouri. A first deed of trust upon this tract had at that time an unpaid balance of approximately $5,000. The tract was estimated to be of a value of approximately $20,000. So that appellee might be adequately secured despite the first deed of trust, it was agreed that $5,000 of the loan proceeds would not be disbursed to Home but would be placed in the form of a cashier's check to be drawn by appellee and made payable jointly to Home and to appellee and to be held by appellee as additional security pending payment of the obligation secured by the first deed of trust and its release. The check was so drawn and held. It was to be applied to payment of the first deed of trust so as to make appellee's deed of trust in effect a first lien. Within the next thirty days Home borrowed $10,000 more from appellee and on April 12, 1965, executed a new collateral form promissory note to appellee for $30,000. At this time Home stated it desired that the $5,000 first deed of trust on the St. Louis property be not retired and it requested that the $5,000 cashier's check be continued to be held as additional security for the entire indebtedness under the terms of the collateral form note. The note became due June 12, 1965, but was not paid. However, interest was paid, in consideration of which collection was postponed thirty days. The note became delinquent again on July 12, 1965, and appellee declined to extend it.

On September 23, 1965, appellee, having previously heard that Home was having financial difficulties, and avowedly acting in accordance with the provisions of the collateral form note, credited the $5,000 cashier's check to the $30,000 note. This was done by an endorsement made by appellee's executive vice-president on the back of the check as follows: "Credit Note #35390 Home Fidelity Life Ins. Co." No other endorsement on the check was made. On the same date, but approximately two hours after this credit was made, appellee was served with a copy of an order made September 23, 1965, by the Cole county, Missouri, Circuit Court authorizing appellant to take charge of Home's property.

The collateral form note executed by Home is not contained in the record on appeal. We are told it was exhibited to the trial court in the proceedings below but apparently was never formally offered in evidence. The record does contain a testimonial description of its terms by an officer of the bank as follows: "We were authorized

to apply the check by the terms of the note. The last paragraph of the note gives us authority to apply to any obligation any money standing to their credit."

The sole issue in the court below was whether the appellee bank could apply the amount of money represented by the cashier's check to the indebtedness owed it by Home. If the check could not be so applied, appellant would then be entitled to it as receiver for Home. Trial was to the court which resolved the issue in favor of appellee. Appellant brings the matter here for review.

Appellant makes two contentions upon appeal: First, Home's prior indebtedness could not be used as a set-off against the proceeds of the cashier's check. Appellant recognizes a bank's right of set-off which is stated in K. S. A. 9-1206 thus:

"Any bank shall have the right to set off any obligation or claim which it has, when the same is matured against any depositor."

But appellant argues there is an exception to this rule illustrated in *McAdoo v. Bank,* 106 Kan. 662, 189 Pac. 155, which would apply here. In that case an ordinary check was drawn on a general deposit and thereafter certified by the bank on which it was drawn. A holder in due course brought an action against the bank to recover on the check, the bank having declined at the request of the depositor to honor it. The ruling relied upon by appellant here is:

"The certification of a check by the bank on which it is drawn is equivalent to the acceptance of a bill of exchange (Negotiable-instruments Law, § 194) and implies that the check is drawn upon sufficient funds in the bank's possession, that they have been set apart for its satisfaction, and that they shall be so applied whenever the check is presented for payment.

"The certification of a check by the bank on which it is drawn creates an original liability on the part of the bank, and in an action on the check it may not resist the enforcement of its contract of certification in order to make a set-off or defense available to its depositor." (Syl. ¶¶ 1 and 2.)

Appellant then points out that a cashier's check is a bill of exchange drawn by the bank upon itself and is accepted by the act of issuance, citing 10 Am. Jur. 2d, Banks § 544, and thus being the equivalent of a certified check, appellant argues that under authority of *McAdoo* the bank would not be entitled to use Home's indebtedness as a set-off against the check.

It may be conceded that a cashier's check may be generally regarded as the substantial equivalent of a certified check in that neither can be countermanded and both circulate in the commercial world as primary obligations of the issuing bank as substitutes for

the money represented. The application of these principles to the case at bar cannot be made as sought by appellant, however, because here the cashier's check was never delivered as such in the channels of commerce; instead it was retained by the bank under specific agreement which provided for particular application of the fund represented by it. The fund was the property of Home, being retained out of the proceeds of the loan made to it, but it was pledged and held for a particular purpose—security for Home's indebtedness.

We look through form to substance, which must prevail. So long as the fund was retained by the bank it was of no great moment how it was evidenced, that is to say, instead of a cashier's check it might as well have been in form of a savings account or some special kind of deposit such as a demand certificate. The fact that the parties chose, perhaps as a matter of convenience in the eventual discharge of the first lien upon the St. Louis property, to evidence the fund in the form of a cashier's check is not controlling. That which is important is the purpose for which the fund was created and held by the bank—to provide additional security to the latter for Home's indebtedness. The cashier's check never having been delivered to a third party, no holder in due course problem is presented but simply a transaction between the bank and the insurance company respecting their debtor-creditor relationship.

We hold Home's indebtedness to the bank could be used as a set-off against the proceeds of the cashier's check.

Appellant's second contention is that the court erred in decreeing the proceeds of the cashier's check were the property of appellee because the signature of both payees named in the check was not endorsed on the check at the time it was credited to Home's indebtedness. It is true no officer of the insurance company endorsed it, only an officer of the bank.

Appellant relies on K. S. A. 52-412, which, although now repealed, was in effect at the time of this transaction and provided:

"Where an instrument is payable to the order of two or more payees or endorsees who are not partners, all must endorse, unless the one endorsing has authority to endorse for the others."

Appellant in support of his position cites *First National Bank v. Daniel*, 137 Kan. 423, 20 P. 2d 488. There a check was made payable to two named individuals who were not partners. Only one of the individuals endorsed the check. In a suit by a third party holder

of the check against the maker this court held that the endorsement did not transfer title to the endorsee. It was specifically pointed out the individual endorsing the check did so without the authority of the other, and the latter received no benefit from the proceeds of the check. These facts make the principle in the case inapplicable to the one at bar. The bank here was more than a mere co-payee of a check. The arrangement under which it held the check implied authority in it to do whatever was necessary to carry out the purpose of the agreement and this would certainly include authority to supply any endorsement necessary (see *Gilbert v. Chase National Bank*, 108 F. Supp. 229). To hold otherwise would permit a debtor to render such a pledge meaningless, and thus defeat it, by the simple act of withholding an endorsement. Here also Home got the beneficial use of the proceeds of the check, it being credited to Home's indebtedness as initially intended.

Our approach has been to determine the issue in terms of the contentions posed by appellant. Essentially the undisputed facts present a transaction where the medium of a cashier's check was used as a part of a security arrangement between the bank and the insurance company. The proceeds represented by the check were applied in exact accord with that agreement and no defenses to the agreement on behalf of the insurance company are asserted or suggested. The insurance company could not have recovered the check and appellant, as its receiver, has no greater right to it (*Cates v. Musgrove Petroleum Corporation*, 190 Kan. 609, 376 P. 2d 819). The trial court's judgment was correct and it is affirmed.

APPROVED BY THE COURT.