BUNGE CORPORATION, Respondent, *v.* MANUFACTURERS HANOVER TRUST COMPANY, Appellant.

First Department, November 18, 1971.

*Robert Ehrenbard* of counsel (*Joseph J. Santora, Thomas R. Cosgrove* and *Roy R. Schwartz* with him on the brief; *Kelley Drye Warren Clark Carr & Ellis,* attorneys), for appellant.

*Seymour Graubard* of counsel (*Michael H. Greenberg* and *Noah Scooler* with him on the brief; *Graubard Moskovitz McGoldrick Dannett & Horowitz,* attorneys), for respondent.

NUNEZ, J.  Plaintiff Bunge Corporation (Bunge) is a major exporter of agricultural commodities, including soybean and other vegetable oils.  Defendant Manufacturers Hanover Trust Company (Manufacturers) is a commerical bank in New York City.  Allied Crude Vegetable Oil Refining Corporation (Allied) was a large scale refiner of and trader in vegetable oils.

Manufacturers permitted Allied to make extensive use of an account Manufacturers maintained for its correspondent, First National Bank of North Bergen, New Jersey (Bergen).  Allied

maintained an account with Bergen, which in turn had an agreement with Manufacturers whereby the latter agreed to accept for deposit to the credit of Bergen, for the account of Allied, instruments payable to Allied and its affiliates without Bergen's indorsement. Bergen authorized defendant to indorse on its behalf and agreed to indemnify defendant. Prior to Allied's bankruptcy on November 19, 1963, plaintiff conducted extensive dealings with Allied, including the purchase of large quantities of oil, financing of Allied's inventory and the sale and transfer of negotiable documents covering vegetable oils.

Until October 1963, plaintiff had been financing Allied by delaying deposits of Allied's checks given in payment for registered warehouse receipts for cottonseed or soybean oil. Beginning in October, 1963 arrangements were changed requiring Allied to pay for the registered warehouse receipts by cashier's check drawn on a first class New York City bank. Between October 17 and November 13, 1963, Allied secured from Manufacturers 12 cashier's checks aggregating over 17 million dollars. The record discloses the following *modus operandi:* Bergen would instruct Manufacturers to draw cashier's checks in an appropriate amount. Allied's employee, Clarkin, picked up the checks and delivered them to plaintiff's assistant treasurer or to a sub-assistant in return for which Clarkin would receive the registered warehouse receipts. Clarkin would then visit another employee of Bunge, the head cashier, Caterina, who was in charge of all deposit transactions for Bunge. The assistant treasurer transmitted the cashier's checks to him. Clarkin would then pick up the cashier's checks from Caterina in substitution for ordinary Allied checks. Caterina delayed the deposit of the ordinary checks. Clarkin then returned the cashier's checks on the day of issuance to Manufacturers who, upon verification with Bergen, canceled the checks and reversed the charge on Bergen's account.

Of the 12 cashier's checks, all but the three in suit totaling over three million dollars, have been satisfied by the payment of the substituted Allied ordinary checks. Bunge has recovered against Manufacturers on its claim that Manufacturers converted the two official checks delivered on November 1, 1963 and the last check of November 13, 1963. The ordinary Allied checks substituted by Clarkin for the three bank checks in issue were never paid. Bunge contends that the record clearly establishes that Manufacturer's possession of the checks was without its knowledge and consent and that the checks, which had been delivered to it, were never delivered or otherwise transferred by Bunge; that its cashier, James Caterina, had stolen the checks

by fraudulently switching them with Allied for ordinary checks, without authority to do so and without Bunge's knowledge. Bunge further contends that the official checks were received for value, i.e., registered warehouse receipts representing vegetable oil sold by Bunge to Allied, and that it would not have delivered the receipts to Allied on November 1 and 13 except in return for the official checks.

In its answer, appellant asserted numerous affirmative defenses, including ratification, acquiescence, illegality and estoppel, together with a counterclaim based on plaintiff's negligence. This court, on an appeal from the denial of summary judgment, struck the defense of negligence from an earlier version of the answer. (28 A D 2d 842.)

The Trial Justice found that plaintiff had established delivery of the cashier's checks to it and a prima facie conversion upon their redelivery, without indorsement, to Manufacturers. He held that proof of delivery and payment of consideration were sufficient to establish the conversion unless appellant's subsequent possession be found authorized or lawful. He concluded that appellant's possession was not authorized, since Caterina lacked the authority to switch the checks and consequently his actions could not be chargeable to his employer, Bunge. However, it should be noted that Bunge's president testified that Caterina was an officer of Bunge and its cashier. A Bunge organizational memorandum received in evidence at the trial reveals that Caterina also handled Bunge's bank borrowings and negotiations on letter of credit payments. The trial court found that "Caterina had previously been authorized to withhold Allied's ordinary checks from deposit pursuant to a payment schedule or to deliver Bunge checks which were to be certified in exchange for Allied ordinary checks, the deposit of which was to be delayed".

The court found no proof that plaintiff had knowledge of Caterina's actions or those of its other employees involved with him. It concluded that plaintiff's records could not be chargeable against plaintiff because they were altered to cover the switches and all its involved employees participated in the fraud. However, there is no evidence that Caterina falsified any records to conceal the check exchanges or the delayed deposits of substituted checks. He prepared a daily cash report which showed the individual deposits made each day by Bunge in its various bank accounts and sent a copy to Bunge's treasurer at the end of each day. A summary based on these reports was sent by the treasurer each day to Bunge's president. These reports clearly showed that the official checks for millions of dollars

were not being deposited on the days the registered warehouse receipts were being delivered to Allied. The trial court found that Bunge authorized the withholding of Allied checks throughout 1963 and indeed the record discloses that the normal procedure at Bunge was the withholding of Allied checks in millions of dollars rather than their prompt deposit.

The trial court in reaching the conclusion that Caterina lacked authority to make the switches and that he falsified the records, placed major emphasis on a sworn written statement given by Caterina to plaintiff's attorneys dated November 19, 1963 and received in evidence as Exhibit 10 against the penal and pecuniary interest of Caterina on the authority of *People* v. *Brown* (26 N Y 2d 88). Exhibit 10 was improperly admitted into evidence. The circumstances under which the Caterina statement was obtained are vastly different from the *Brown* case, where the Court of Appeals held a limited extension of an exception to the hearsay rule was warranted. In *Brown,* where the defendant had been convicted of murder, the main issue was whether he had acted in self-defense. Defendant contended that the deceased had a pistol drawn when he shot him. One, Seals, had made an admission (p. 90) to the police and to the defendant's lawyer that he had " picked up the gun immediately after the shooting " for which defendant had been convicted. Seals was held in jail awaiting trial on a robbery charge at the time of defendant's trial. Seals, called as a defense witness, refused to answer questions on constitutional grounds. Proof of his admissions was offered. The court, on then settled New York authority, sustained the objection to them. The Court of Appeals held that the rule in New York should be modernized to receive an admission against penal interest when it is found to be material and reliable and where the person making the admission is not available as a witness.

Unlike *Brown,* the plaintiff prepared the statement and offered it in evidence. It was obviously prepared for this litigation. It is vague. There is no clear admission against Caterina's interest. He had abundant motive to attempt to please his former employer without injury to himself. Caterina had been employed by Bunge 17 years. He had resigned about one week before the statement was taken from him by two of Bunge's top attorneys who prepared it after two days of consideration. The statement lacks clarity and precision in relating to the checks in issue or, indeed, in admitting any liability or crime. And, instead of producing the testimony of the attorneys who drafted the statement, plaintiff was content, in establishing a foundation for the statement, to rely only on the testimony of a

third attorney who was in the room with Caterina only for a few minutes to notarize the statement. Under these circumstances the statement was inadmissible. (*Matter of Knetzer*, 243 F. 2d 460 [7th Cir., 1957], cert. den. 355 U. S. 835; *Gilette Co.* v. *Travelers Ind. Co.*, 365 F. 2d 7 [7th Cir., 1966].) In any event, self-motivated, as it is, it is a slender prop on which to rest so substantial a verdict.

Under the circumstances presented by this record, the plaintiff having elicited evidence of the check switches, was required to show that the switches were unauthorized. Plaintiff had the burden to explain the failure of its higher-ranking officers to put a stop to the practice when they became, or should have become, aware of it as the result of daily and weekly financial reports rendered to them. (*American Hominy Co.* v. *Millikin Nat. Bank*, 273 F. 550 [S. D. Ill., 1920]; *Crown Willamette Paper Co.* v. *McLaughlin*, 81 F. 2d 365 [9th Cir., 1936].) Plaintiff has not explained these documents, but has recovered judgment because defendant did not convince the court that those documents were sufficient to prove plaintiff's acquiescence in Caterina's check switching. From October 17, until November 13, 1963, checks had been exchanged in the millions of dollars at a time when, in accord with the findings below, one would expect plaintiff to have been taking a close look at transactions with Allied, there just having been a change in the practice of financing Allied by delaying payment of its ordinary checks. And, there were abundant records rendered throughout that period to bring to plaintiff's attention the fact, at least, that the cashier's checks were being withheld, an idle gesture that would have exposed, by deduction or inquiry, that the checks had been switched and that an ordinary check of Allied was being held from deposit. Conversion is "an unauthorized assumption and exercise of the right of ownership over goods belonging to another" (*Employers' Fire Ins. Co.* v. *Cotten*, 245 N. Y. 102, 105 [1927]). At bar, Manufacturers issued its checks and delivered them to its customer. Later the same day the customer returned the check. That they had been used to obtain the warehouse receipts from plaintiff and Allied's checks substituted, was not known to Manufacturers. In accepting these checks back from Allied, Manufacturers was dealing with the remitter to whom it had delivered its negotiable check. Absent any unusual circumstances sufficient to raise a duty of inquiry or knowledge of delivery or wrongdoing, the bank was justified in relying on a presumption of continued ownership by Allied. (See Brady, Bank Checks, § 3.5 [4th ed. 1969]; Michie, Banks

and Banking, ch. 9, § 257; *Buehler* v. *Galt,* 35 Ill. App. 225 [1889].)

Allied, as owner of the checks, had the absolute right of disposing of them as it saw fit, including the right to return them to Manufacturers. (*Anglo-South Amer. Bank* v. *National City Bank of N. Y.,* 161 App. Div. 268 [1st Dept., 1914], affd. 217 N. Y. 726 [1916].)

Even assuming that Bunge was as innocent as Manufacturers, it was Bunge who placed Caterina in a position of trust and confidence which enabled him to make the check switches and therefore the loss must fall on Bunge. (*National Safe Deposit Co.* v. *Hibbs,* 229 U. S. 391 [1913]; *Easter* v. *Allen,* 8 Allen [90 Mass.] 7; *McNeil* v. *The Tenth Nat. Bank,* 46 N. Y. 325; *Gardner* v. *Beacon Trust Co.,* 190 Mass. 27 [1906].)

While we do not reach the defense of illegality, it should be noted that there are strong indications that the registered warehouse receipt transactions, including those in suit herein, were meaningless except as an attempt to manipulate the market in the vegetable oil products involved. Plaintiff's stance that it was unaware of the illegal nature of Allied's activities seems incredible in view of its deep involvement with Allied to the tune of many millions of dollars. It is similarly inherently incredible that plaintiff, wary of Allied's continued financial stability, having altered by October, 1963 its former practice of delaying deposit of ordinary checks, would demand and take official bank checks, and subsequently be ignorant of the switches made by Caterina where plaintiff's books and records reveal an otherwise unexplainable delay in the deposit of millions of dollars of official bank checks.

The judgment entered Supreme Court, New York County, January 29, 1971 (FEIN, J.) should be modified on the law and on the facts so as to vacate the award to plaintiff in the total sum of $4,484,151.81 and to dismiss the complaint, and otherwise affirmed with costs and disbursements to appellant.

CAPOZZOLI, J. P., and McGIVERN, J., concur; McNALLY and MACKEN, JJ., dissent and vote to affirm on opinion of Mr. Justice ARNOLD L. FEIN at Trial Term.

Judgment, Supreme Court, New York County, entered on January 29, 1971, modified, on the law and on the facts, so as to vacate the award to plaintiff in the total sum of $4,484,151.81 and to dismiss the complaint, and otherwise affirmed. Appellant shall recover of respondent $50 costs and disbursements of this appeal.