(No. 46275.—)

MARGARET A. GILLESPIE, Appellee, v. THE RILEY MANAGEMENT CORPORATION *et al.*—(National City Bank in Chicago, Appellant.)

*Opinion filed November 27, 1974.*

Rathje, Woodward, Dyer & Burt, of Wheaton (Peter A. Zamis, of counsel), for appellant.

Webber, Balbach, Thies & Follmer, of Urbana (Craig R. Webber, of counsel), and Jacobs & Spencer, of Villa Park (Patrick J. Leston, of counsel), for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court:

The plaintiff filed a six-count complaint against the defendants, the Riley Management Corporation, William G. Riley, National City Bank in Chicago, and Lyles Zabriskie. Counts I and II were against Riley Management Corporation for the conversion of $25,000; count III was against Riley Management Corporation, William G. Riley and Lyles Zabriskie for the conversion of $25,000 by misrepresentations; count IV was against Riley Management Corporation for fraud and misrepresentation whereby said defendant obtained $25,000 of plaintiff's money; count V alleged the same charges against the defendant William G. Riley; count VI was against the defendant National City Bank in Chicago and alleged the facts hereinafter set forth with reference to the issuance by said bank of its cashier's check in the sum of $25,000 payable to Riley Management and plaintiff, which check said bank paid to Riley Management without plaintiff's endorsement thereon, by issuing to Riley Management two new cashier's checks payable to the management corporation only.

This appeal pertains only to count VI. The trial court dismissed the plaintiff's complaint, and she appealed to the appellate court, which reversed the trial court. The defendant National City Bank in Chicago appealed from the judgment of the appellate court (13 Ill. App. 3d 988) holding that a cashier's check, purchased by a corporation and made payable to it and a third party, may not be returned by the purchaser to the issuing bank for credit

without the endorsement of the two payees. We allowed petition for leave to appeal.

The stipulated facts are that the Riley Management Corporation (the Corporation) entered into a contract with plaintiff, Margaret A. Gillespie, to construct, convey and sell an apartment building to her. The total purchase price was $176,400, with $25,000 down payment as earnest money. The earnest money was to be held by the Corporation in an escrow account requiring the plaintiff's signature for withdrawal, as well as the Corporation's. After he received the $25,000 earnest money, but before establishing an escrow account, William G. Riley, president of the Corporation, rather than setting up an escrow, purchased a cashier's check, payable to both the Corporation and the plaintiff. He assured the plaintiff that both their signatures would be necessary to negotiate the check and he advised the plaintiff that he did this to avoid the charges for an escrow; the plaintiff apparently made no objection.

At the time he deposited the earnest money in the Corporation's account at the defendant bank, Riley requested the cashier's check. The balance in the Corporation's account was only $13,000 at the time, and the defendant bank refused to issue the check until such time as plaintiff's check for the earnest money cleared. Upon notification of clearance, the defendant bank issued the $25,000 cashier's check payable to the Corporation and plaintiff. About one month later, Riley returned the cashier's check to the defendant bank, notified the defendant bank that the check had not been used for the intended purpose, and requested two new cashier's checks (one for $15,000 and one for $10,000) payable to the Corporation only.

We hold that the foregoing circumstances were unusual and sufficient to raise a duty in the defendant bank of inquiry concerning delivery or wrongdoing by the

Corporation, and the bank was not justified in relying on the presumption of continued ownership by the Corporation. There were no endorsements by the payees. The defendant bank requested Riley to write on the reverse of the cashier's check "not used for purpose issued" and he did so. The defendant bank then issued the two new checks as requested.

About two months later, plaintiff demanded that defendant bank return $25,000 to her, and upon refusal plaintiff sued the defendants for conversion. Upon the stipulated facts, the trial court found for the defendant bank. The appellate court reversed and remanded.

The defendant bank argues that the Corporation, as purchaser of the cashier's check, has the right to have it cancelled under section 3—605 of the Uniform Commercial Code (Ill. Rev. Stat. 1965, ch. 26, par. 3—605), which provides:

> "Section 3—605. Cancellation and Renunciation.
> (1) The holder of an instrument may even without consideration discharge any party
>> (a) in any manner apparent on the face of the instrument or the indorsement, as by intentionally cancelling the instrument or the party's signature by destruction or mutilation, or by striking out the party's signature; or
>> (b) by renouncing his rights by a writing signed and delivered or by surrender of the instruments to the party to be discharged.
> (2) Neither cancellation nor renunciation without surrender of the instrument affects the title thereto."

The plaintiff contends that the cashier's check was issued when the defendant bank signed and delivered it to Riley, and that since the Corporation was named as a co-payee thereon, there was delivery of the cashier's check to the Corporation when Riley, its president, picked it up from the bank; and that thereafter, under section 3—116 of the

Uniform Commercial Code, it could be negotiated, discharged, or enforced only by both payees. Section 3—116 provides:

"Section 3—116. Instruments Payable to Two or More Persons.

An instrument payable to the order of two or more persons

(a) if in the alternative is payable to any one of them and may be negotiated, discharged or enforced by any of them who has possession of it;

(b) if not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them." Ill. Rev. Stat. 1965, ch. 26, par. 3—116(a) and (b).

The defendant bank urges that under section 3—605(1)(b) of the Uniform Commercial Code Riley Management was a holder and as such it renounced its rights by writing the notation on the check "not used for purpose issued." Section 3—102(1)(a) of the Uniform Commercial Code (Ill. Rev. Stat. 1965, ch. 26, par. 3—102(1)(a)) provides that " 'Issue' means the first delivery of an instrument to a holder or a remitter." Section 1—201(14) of the Uniform Commercial Code (Ill. Rev. Stat. 1965, ch. 26, par. 1—201(14)) provides that " 'Delivery' *** means voluntary transfer of possession"; and section 1—201(20) of the Uniform Commercial Code (Ill. Rev. Stat. 1965, ch. 26, par. 1—201(20)) defines "holder" as follows: " 'Holder' means a person who is in possession of a document of title or an instrument or an investment security drawn, issued or endorsed to him or to his order or to bearer or in blank." Section 3—116(a) and (b) and 3—605(1)(a) and (b) are parts of the Uniform Commercial Code which relate to the same subject matter and are in pari materia, and should be construed together. (Petterson v. City of Naperville (1956), 9 Ill.2d 233.) Section 1—102 of the Act provides:

"(1) This Act shall be liberally construed and applied to promote its underlying purposes and policies.

   (2) Underlying purposes and policies of this Act are

      (a) to simplify, clarify and modernize the law governing commercial transactions;

      (b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

* * *."

A cashier's check is a bill of exchange drawn by the bank upon itself and is accepted by the act of issuance. (10 Am. Jur. 2d *Banks,* sec. 544 (1963); *Pennsylvania v. Curtiss National Bank* (5th Cir. 1970), 427 F.2d 395, 398.) When the purchaser of the cashier's check has paid to the bank the consideration specified by it for the execution of this negotiable instrument, and the bank has prepared and issued to the purchaser the instrument for delivery to the payee, the contract between the bank and purchaser becomes executed. (*Cross v. Exchange Bank Co.* (1958), 110 Ohio App. 219, 221, 168 N.E.2d 910, 912.) The bank represents that as drawee it will honor the draft when presented. The cashier's check is substantially equivalent to a certified check in that neither generally can be countermanded and both circulate in the commercial world as primary obligations of the issuing bank as substitutes for the money represented. (*Scharz v. Twin City State Bank* (1968), 201 Kan. 539, 541-542, 441 P.2d 897, 899.) In *Scharz,* the court said:

"The cashier's check never having been delivered to a third party, no holder in due course problem is presented but simply a transaction between the bank and the insurance company respecting their debtor-creditor relationship." 201 Kan. 539, 542, 441 P.2d 897, 900.

The critical question in this case is in what capacity was the Corporation acting when it returned the check to the bank for cancellation. Was it acting as a purchaser or as one of two joint payees?

In the case at bar, it can be said that since the cashier's check never entered into the stream of commerce, it remained an evidence of a debtor-creditor relationship between the bank and the purchaser. However, the purchaser of a cashier's check remains the "owner" thereof until such time as he delivers or negotiates it to the payee. Until such delivery, the purchaser retains the right to cancel. (*Buehler v. Galt* (1889), 35 Ill. App. 225, 227; *Scharz v. Twin City State Bank* (1968), 201 Kan. 539, 541-542, 441 P.2d 897, 899-900; *Bunge Corp. v. Manufacturers Hanover Trust Co.* (1971), 37 App. Div. 409, 415, 325 N.Y.S.2d 983, 988; *Umbsen v. Crocker First National Bank* (1949), 33 Cal. 2d 599, 602, 203 P.2d 752, 754; *Burke v. Mission Bay Yacht Sales* (1963), 214 Cal. App. 2d 723, 729, 29 Cal. Rptr. 685, 688.) In *Bunge* the court stated:

> "In accepting these checks back from Allied, Manufacturers was dealing with the remitter to whom it had delivered its negotiable check. Absent any unusual circumstances sufficient to raise a duty of inquiry or knowledge of delivery or wrongdoing, the bank was justified in relying on a presumption of continued ownership by Allied." (37 App. Div. 409, 414, 325 N.Y.S.2d 983, 988.)

In the case at bar, there were unusual circumstances sufficient to raise a duty of inquiry on the defendant bank concerning delivery or wrongdoing by the Corporation, and the bank was not justified in relying on a presumption of continued ownership by the Corporation.

Absent any unusual circumstances sufficient to raise a

duty of inquiry or knowledge of delivery or wrongdoing, the bank was justified in relying on a presumption of continued ownership by the Corporation. Aside from the legal basis for such a rule, the practical reasons therefor are obvious. One acquires a cashier's check for the purpose of assuring the payee that there are the necessary funds contemplated by a transaction, and that the check, like the money it represents, cannot be countermanded or revoked after the payee has received it. However, often a contemplated transaction does not materialize. The purchaser may then be left with a cashier's check purchased by him, but payable to someone with whom he no longer is commercially involved. It would impose an unwarranted commercial burden to require the purchaser to obtain the endorsement of such a payee to have the cashier's check honored or cancelled. Until the purchaser places such a check in the stream of commerce, he must, of practical, commercial necessity, be able to cancel the check upon its surrender to the bank.

There is little doubt that, in the factual setting of this case, had the purchaser named only the Corporation—purchaser—as payee, the purchaser would have been able to cancel the check upon its retention of possession of the check and surrender to the bank. The bank would have been justified in relying upon a presumption of continued ownership by the purchaser. (*Bunge Corp. v. Manufacturers Hanover Trust Co.* (1971), 37 App. Div. 409, 414, 325 N.Y.S.2d 983, 988.) In *Buehler v. Galt,* 35 Ill. App. 225, 229, the court stated:

> "The court holds, as a matter of law, that the possession of a check by the drawer raises a presumption that it has not been delivered to the payee, and that unless notice of a different state of facts is brought home to the banker upon whom the check is drawn, he has a right to act upon that presumption and cancel the check on

the application of the drawer."

We do not believe that the fact that the purchaser of the cashier's check had itself named as a co-payee alters the foregoing presumptions, absent unusual circumstances sufficient to raise a duty of inquiry or knowledge of delivery or wrongdoing.

In the case at bar, however, there were unusual circumstances sufficient to raise a duty of inquiry or knowledge of delivery or wrongdoing by the Corporation. The bank would not issue the original $25,000 cashier's check to the Corporation as drawer-purchaser until the plaintiff's earnest money check for $25,000, which was deposited in the Corporation's account, had cleared. The Corporation at that time had a balance of only $13,000 in its account. When the plaintiff's $25,000 check cleared, the bank issued the $25,000 cashier's check payable to the plaintiff and the Corporation. Riley, president of the Corporation, returned the cashier's check for $25,000 about a month later, notified the bank that it had not been used for the intended purpose, and requested two new cashier's checks (one for $15,000 and one for $10,000) payable only to the Corporation. At the bank's request, Riley wrote "not used for purpose issued" on the reverse side of the $25,000 cashier's check. The plaintiff, a joint payee, did not endorse the cashier's check for $25,000. These circumstances in this case were so unusual as to raise a duty on the bank to inquire into the nature of this transaction concerning wrongdoing, delivery and the lack of plaintiff's endorsement. The bank failed to make any inquiry and issued the $15,000 and $10,000 cashier's checks payable to the Corporation only, as requested, and thereby made possible the conversion by the Corporation of $25,000 of plaintiff's money. Consequently, it is liable to the plaintiff for that amount.

For the reasons stated herein, the judgment of the appellate court is affirmed and the cause is remanded to

220

the circuit court for the entry of judgment consistent with the views expressed herein.

*Affirmed and remanded.*