(770 P.2d 847)

No. 62,514

EUGENE SALOGA, *Appellee*, v. CENTRAL KANSAS CREDIT UNION, *Appellant.*

Opinion filed March 24, 1989.

*Kenneth H. Jack, Eric D. Bruce*, and *James Holt*, of Bruce & Davis, of Wichita, for the appellant.

*Stephen W. Brown*, of Megaffin and Brown, of Pratt, for the appellee.

Before ABBOTT, C.J., DAVIS and LARSON, JJ.

LARSON, J.: Central Kansas Credit Union (Credit Union) appeals the district court's decision that a cashier's check had been delivered to Eugene Saloga.

In early 1986, Saloga was the owner-driver of a truck using Tom Herd's permits. Payments for hauls performed by Saloga

were made to Herd, who was entitled to retain a percentage for use of the permits and for reimbursement of the cost of insurance, but obligated to remit the balance to Saloga. A dispute arose over the amount Herd owed Saloga.

Saloga retained attorney Gorden Stull and Herd employed attorney Phil Lunt to resolve the disagreement. Lunt and Stull worked out an agreement that $2,968.46 was to be placed by Herd in a cashier's check payable to Herd and Saloga. The parties herein by stipulation agreed:

"Upon determination as to who was entitled to said $2,968.46, said 'cashier's check' would be endorsed and delivered to the person entitled to the same."

On October 31, 1986, Credit Union issued the cashier's check payable to the order of both Herd and Saloga in the amount of $2,968.46. The remitter was Tom Herd Trucking, an account which Tom Herd and his wife, Brenda, maintained with Credit Union. The cashier's check was delivered to Lunt the day of its issuance.

Shortly thereafter, at a meeting between Stull and Lunt at Lunt's office, they agreed Herd owed Saloga at least the amount of the cashier's check. Lunt gave Stull the check. Stull had a copy of the check made and then gave the original back to Lunt with the agreement that Lunt was to obtain Herd's indorsement and return the check to Stull.

Stull and Lunt agreed additional amounts were owing from Herd to Saloga for other hauls but, because the amount due from Saloga to Herd for insurance reimbursement was unknown, the final settlement was postponed until insurance information could be obtained. In the meantime, Lunt was to get Herd to indorse the check.

The cashier's check was never returned to Stull or Saloga, and on November 21, 1986, Saloga sued Herd in the district court of Pratt County requesting adjudication of disputes concerning all monies owned by Saloga to Herd. Paragraph five of this petition alleged the $2,968.46 cashier's check was delivered by Herd to Lunt but "notwithstanding that fact, defendant [Herd] has failed and refused to deliver said check and endorse the same to plaintiff [Saloga]." Herd was served with summons and a copy of the petition on December 11, 1986. Credit Union was not a party to that suit.

On December 27, 1986, Brenda Herd went to Lunt's office and

demanded and was given the cashier's check, which was returned to Credit Union. Credit Union voided the check and credited the sum back to the account of Tom Herd Trucking. The check had not been indorsed by either Herd or Saloga.

On February 2, 1987, Saloga took judgment by default against Herd. The journal entry of judgment ordered Herd to deliver the cashier's check to the clerk of the district court of Pratt County and indorse the same in favor of Saloga. Prior to the judgment being taken, Herd had filed a chapter 13 bankruptcy proceeding, although Saloga was not given notice and was unaware of the bankruptcy filing at the time judgment was taken.

Shortly after the judgment was taken, Saloga learned that Brenda Herd had taken the check to Credit Union and that it had been cancelled. Credit Union refused to deliver the check to Saloga or honor the check by paying the face amount to Saloga.

In June of 1987, Saloga filed this action against Credit Union, requesting judgment for the amount of the check plus interest and alleging Credit Union had wrongfully made payment on the cashier's check. Credit Union answered, denying liability.

The matter was tried based on stipulated facts and oral testimony. The sole issue was whether there had been delivery of the cashier's check. Credit Union's dismissal request at the close of Saloga's evidence on the grounds of res judicata was denied.

After the conclusion of all evidence, the court made specific findings of fact and conclusions of law that: 1) actual delivery of the cashier's check had taken place from Lunt to Stull; 2) Lunt, if not a trustee or escrow agent, was the agent of Saloga to obtain indorsement of the check; 3) Credit Union had public knowledge of the dispute between Saloga and Herd by virtue of the lawsuit; and 4) Credit Union would have been prudent to have checked with Saloga to determine if cancelling the draft without his indorsement met with his approval. Judgment was rendered for Saloga against Credit Union in the amount of the cashier's check plus interest. Credit Union appealed.

*Did the trial court properly rule the cashier's check had been delivered to Saloga?*

Our scope of review is whether the trial court's findings are supported by substantial competent evidence.

" 'When a verdict [or judgment] is attacked for insufficiency of the evidence, the duty of the appellate court extends only to a search of the record for the purpose

of determining whether there is any competent substantial evidence to support the findings. The appellate court will not weigh the evidence or pass upon the credibility of the witnesses. Under these circumstances, the reviewing court must review the evidence in the light most favorable to the party prevailing below.' " *Smith v. United Technologies*, 240 Kan. 562, 570, 731 P.2d 871 (1987).

The nature and character of a cashier's check and the law applicable thereto was enumerated in *Meador v. Ranchmart State Bank*, 213 Kan. 372, 376, 517 P.2d 123 (1973), where the Kansas Supreme Court quoted 10 Am. Jur. 2d, Banks § 544:

" 'A cashier's check is a bill of exchange, drawn by the bank upon itself, and is accepted by the act of issuance. . . . A cashier's check is a primary obligation of the bank, rather than the depositor, as in the case of an ordinary check, and a promise to pay which ordinarily cannot be countermanded. It is issued by the authorized officer of the bank, directed to another person, evidencing the fact that the payee is authorized to demand and receive from the bank, upon presentation, the amount of money represented by the check. Cashiers' checks, from their peculiar character and general use in the commercial world, are regarded substantially as the money which they represent, a rule that is not extended to ordinary checks of the depositor drawn on his bank.' (pp. 518-519.)"

The trial court stated in its findings of fact and conclusions of law that the sole issue was whether there was a delivery of the cashier's check and if such a delivery existed then Saloga must prevail.

The court's finding of delivery is supported by Stull's un-equivocal testimony that he had an agreement with Lunt that the money represented by that cashier's check was money belonging to Saloga. Stull had actual possession of the cashier's check and returned it to Lunt only upon Lunt's assurance that Lunt would obtain Herd's indorsement.

This testimony supports delivery as defined in K.S.A. 1988 Supp. 84-1-201(14): "'Delivery' with respect to instruments, documents of title, chattel paper or certified securities means voluntary transfer of possession."

The fact that a cashier's check is in possession of the remitter raises a presumption that it has not been delivered to the payee, and, unless different facts are made known to the bank, it has the right to act upon that presumption. *Gellert v. Bank of California Nat. Assn.*, 107 Or. 162, 214 Pac. 377 (1923), held the bank was not liable to the payee, which had never received delivery of the check. In the instant case, the trial court specifically found the check had been delivered to Stull, who was Saloga's agent, and

the transfer by Stull back to Lunt was merely for purposes of obtaining Herd's indorsement.

Credit Union cites and principally relies on *Bunge Corp. v. Mfrs. Hanover Trust*, 31 N.Y.2d 223, 335 N.Y.S.2d 412, 286 N.E.2d 903 (1972). Manufacturers Hanover, at the request of a correspondent bank, issued cashier's checks on behalf of Allied drawn to the order of Bunge, with whom Allied had dealings. Allied was not a party to the checks but was a "remitter" of the funds (Herd was the remitter of the funds herein but, unlike in *Bunge*, was also a payee of the cashier's check). An employee of Allied delivered the checks to Bunge, but later got them back in exchange for worthless ordinary checks drawn by the correspondent bank's customer, in conjunction with a fraudulent scheme being carried out between the Allied employee and the Bunge employee. The cashier's checks, unindorsed, were then returned to the issuing bank for cancellation. The court denied recovery by the payee of the cashier's checks against the issuing bank, on the ground that the payee was "equitably estopped" through the fraudulent conduct of its own employee to whom the cashier's checks had been entrusted.

Credit Union never raised at the trial nor does it raise here any issue of equitable estoppel against Saloga based upon Stull's redelivery of the check to Lunt. That issue cannot now be considered by this court. See *Kansas Dept. of Revenue v. Coca Cola Co.*, 240 Kan. 548, 552, 731 P.2d 273 (1987).

In discussing the liability assumed by banks in accepting unindorsed returned checks without determining whether delivery had been effected, the dissent in *Bunge* stated:

"It may well be that banks often take back unindorsed cashier's checks from their customers, but if they do, it does not mean that they are not or should not be liable, when it turns out that the checks have been delivered and not returned by the payee (see 40 Banking L.J. 527, *supra*). . . .

". . . Repeating in part, material quoted from the Banking Law Journal at the beginning of this opinion: 'Before canceling the draft and returning the money, the bank should ascertain whether such delivery has been made. It is possible in a case of this kind for the purchaser to deliver the draft to the payee and thereafter wrongfully regain possession of it. If the bank finds this to be the situation, it should refuse to cancel the draft. By paying the draft in such circumstances the bank would render itself liable to the payee.' " 31 N.Y.2d at 236-37 (Breitel, J., dissenting).

In *Gillespie v. Riley Management Corp.*, 59 Ill. 2d 211, 319 N.E.2d 753 (1974), it was held that a bank was under the duty of

inquiry and therefore liable to Gillespie for accepting return of a cashier's check which had been made out to a corporation and Gillespie as co-payees and subsequently issuing two replacement cashier's checks totalling the same amount solely to the corporation. The Illinois Supreme Court recognized the fact that the purchase of a cashier's check by one who is named as a co-payee does not alter the presumption that a cashier's check in possession of the purchaser has not been delivered to the payee and, absent unusual circumstances sufficient to raise a duty of inquiry or knowledge of delivery or wrongdoing, the bank has the right to act upon the presumption of nondelivery and cancel the check upon the application of the purchaser. The bank's duty of inquiry (and liability to Gillespie) resulted from the bank refusing to issue a cashier's check for $25,000 until Gillespie's earnest money check for $25,000 deposited in the corporation's account had cleared. When the corporation's president returned the check one month later unindorsed by Gillespie and wrote on its back, "not used for purpose issued," the circumstances were so unusual as to raise a duty on the bank to inquire into the nature of the transaction concerning wrongdoing, delivery, and the lack of Gillespie's indorsement. 59 Ill. 2d at 213-14. See Brady on Bank Checks § 5.5, Presumption Against Delivery (6th ed. 1987).

*Gillespie* resolved the argument that a purchaser of the cashier's check has the right to have it cancelled under U.C.C. § 3-605 (K.S.A. 84-3-605) as opposed to Gillespie's contention that delivery occurred when the check was picked up by the co-payee and thereafter under U.C.C. § 3-116 (K.S.A. 84-3-116) the check could be negotiated, discharged, or enforced only by both payees. The two sections of the U.C.C. were *in pari materia* and deemed to be construed together, with the critical question being whether the corporation was acting as a purchaser or one of two joint payees when it returned the check for cancellation. The Illinois court reasoned the fact that a purchaser of a cashier's check has itself named as one of two co-payees does not alter the presumption that possession by the purchaser allows cancellation absent unusual circumstances sufficient to raise a duty of inquiry or knowledge of delivery or wrongdoing.

As the trial court specifically found herein, the lawsuit had been filed by Saloga against Herd prior to the time Credit Union

gave Herd the funds and cancelled the cashier's check payable to both Saloga and Herd without making inquiry as to Saloga's rights. The suit between Saloga and Herd was a matter of public record within Pratt County, Kansas, of which Credit Union had constructive notice.

At the close of Saloga's evidence, Credit Union moved to dismiss alleging res judicata because of the allegations of *Saloga v. Herd* that Herd had "delivered said check to his attorney, Philip D. Lunt, Pratt, Kansas but notwithstanding that fact, defendant [Herd] has failed and refused to deliver said check and endorse the same to plaintiff [Saloga]." It is obvious the communities of interest were not present for res judicata to be applicable, although Credit Union now attempts to change and alter the argument to be that of collateral estoppel. Again, our longtime rule that an issue not raised below or presented to the trial court cannot be raised for the first time on appeal, *In re Hamstead*, 11 Kan App. 2d 527, 528, 729 P.2d 461 (1986), precludes consideration of this argument. Even if we were required to do so, it would not benefit Credit Union because the earlier suit against Herd was one for redelivery of the cashier's check thought by Saloga to be in Lunt's possession. The issue of delivery and redelivery of the check was not litigated in *Saloga v. Herd.*

Credit Union also attempts to raise for the first time on appeal an issue of election of remedies, which for the reason previously stated may not now be considered.

The case was tried on the issue of delivery of the cashier's check. Substantial competent evidence exists to support the trial court's decision, which is affirmed.