No. 46,997

CHESTER L. MEADOR, *Appellee,* v. RANCHMART SATE BANK, *Appellant.*

(517 P. 2d 123)

Opinion filed December 8, 1973.

*Myron L. Listrom,* of Sloan, Listrom, Eisenbarth, Sloan and Glassman, of Topeka, argued the cause and was on the brief for the appellant.

*Joseph S. Davis, Jr.,* of Olathe, argued the cause, and *Daniel S. Millman,* of Kansas City, Mo., was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an action against a bank for wrongfully honoring a cashier's check drawn by it, which check was initially purchased by plaintiff and issued upon his instance. In trial to the court plaintiff prevailed and the bank now appeals.

The parties submitted the case to the trial court upon a written stipulation of facts together with certain exhibits referred to therein. By way of prelude, although the exact role played by plaintiff in this transaction is not revealed in the record, obviously it was contemplated by him that the proceeds of the check were to be used on his behalf as earnest money in securing from a lend-

ing organization a loan commitment for the purchase of a hotel property in Kansas City, Mo. We quote the parties' stipulation:

"1. On November 26, 1969, the plaintiff, Chester L. Meador, went to the Ranchmart State Bank at its place of business in Overland Park, Johnson County, Kansas, to purchase a cashier's check, a copy of which is attached hereto, marked Exhibit A. Plaintiff met with Mr. Charles D. Bohyer, who was at the time a Vice-President of the defendant bank. Plaintiff showed Mr. Bohyer a letter from W. W. Hutto of Missouri Realty and Investment Company directed to Mr. Paul Roberts of Imperial Commercial Corporation, and dated November 20, 1969 (Defendant's Deposition Exhibit C), together with a 'Financial Commitment' from International Funding and Insurance Associates (Defendant's Deposition Exhibit D), copy hereto attached. Plaintiff advised Mr. Bohyer that the purpose of the cashier's check was shown in the letter to Paul Roberts, and requested that the check be drawn and the wording typed on the reverse side thereof in language identical to that set forth in said letter. Mr. Bohyer typed up the check, and after completing the front of the said check, Mr. Bohyer turned it over and copied the following language from the letter on the back of the check as follows:

" 'Earnest money deposit on loan to be made to Ambassador on Broadway, Inc. for Ambassador Hotel on or before December 31, 1969, per agreement.'

"2. That the plaintiff then made a loan of $30,000.00 to W. W. Hutto, and as evidence of said loan delivered to W. W. Hutto cashier's check in question. In consideration thereof, W. W. Hutto executed and delivered to the plaintiff his promissory note, a copy of which is attached hereto marked Defendant's Deposition Exhibit B. W. W. Hutto then delivered the said check to Paul Roberts in New York, along with his letter of November 20, 1969 (Defendant's Deposition Exhibit C), together with the Financial Agreement (Defendant's Deposition Exhibit D) on or about the 28th day of November, 1969, and at that time W. W. Hutto received acceptance from Paul Roberts (Defendant's Deposition Exhibit G).

"3. That prior to the time the said check was forwarded to the defendant through ordinary banking channels, someone at some date unknown, deleted the date 'December 31, 1969' on the reverse side thereof, and the check was endorsed as is shown thereon.

"4. That said check was presented to the Mechanics National Bank of Worchester, Massachusetts, on or about the 8th day of December, 1969 by Arthur T. Winters. Said bank paid the same over the endorsement appearing thereon and forwarded it on through ordinary banking channels to the defendant bank, which received and paid the same on or about December 10, 1969.

"5. On or about January 30, 1970, W. W. Hutto received a letter (Defendant's Deposition Exhibit E attached hereto), advising that the mortgage application had been denied.

"6. That on August 11, 1970, the plaintiff commenced an action against W. W. Hutto on the promissory note (Defendant's Deposition Exhibit B) in the Circuit Court of Missouri, Sixteenth Judicial Circuit, Case No. 739510, as shown by Defendant's Deposition Exhibit F attached hereto; that W. W.

Hutto has filed his answer therein, a copy of which is attached hereto (Defendant's Exhibit H); that on or about the 7th day of July, 1970, W. W. Hutto purportedly assigned any and all claims and causes of action he had pertaining to said check to the plaintiff herein. A copy of said purported assignment is attached hereto marked Defendant's Exhibit I."

Some elaboration of certain exhibits referred to should be made:

Exhibit A, the cashier's check in the amount of $30,000, shows plaintiff as remitter and "International Funding & Insurance-Associates and Arthur T. Winters, Their Attorney" as payees.

Exhibit C, the letter dated November 20, 1969, which was shown to the bank when plaintiff purchased the cashier's check, was one from Hutto (apparently a real estate broker interested in the sale of the hotel property) to Roberts (apparently a money finder). In pertinent part it read:

"Enclosed herewith, please find two copies of the commitment changed in certain respects to reflect the discussion with you in your office on Monday, while still using their approximate form. If there are any comments please call me.

"Also enclosed, is the proposed wording of the endorsement that will be placed on the check to be delivered by me to you on Tuesday next.

"Payees: International Funding & Insurance Associates, and Arthur T. Winters, their Attorney.

"Endorsement: 'Earnest Money deposit on loan to be made to Ambassador on Broadway, Inc., for Ambassador Hotel on or before December 31, 1969 per agreement'.

"Wording of transmittal letter: to Paul Roberts, Imperial Financial Corp.

" 'We herewith deposit in your hands check #_____ Dated _____ in the amount of $30,000.00, certified by _____ Bank, which you are authorized to deliver to International Funding & Insurance Associates and Arthur T. Winters, their Agent and Attorney, upon receipt of a loan commitment issued by International Funding and Insurance Associates in the form attached, together with written statement of Bank references and specified closing date, not later than December 31, 1969, all in accordance with our understanding and agreement.' "

Exhibit D, mentioned in the foregoing letter, was an unsigned copy of a financing commitment instrument by International Funding and Insurance Associates wherein it committed itself, upon named conditions respecting the contemplated hotel property purchase including execution of mortgage, to loan three million dollars to Ambassador On Broadway, Inc., such commitment to become effective upon date of issuance, with closing date not later than December 31, 1969.

Exhibit G is a letter dated November 28, 1969, from Hutto to

Roberts transmitting the cashier's check, along with a copy of exhibit C, with instructions to deliver the check to International Funding and "Arthur T. Winters, their Agent and Attorney, upon receipt of a loan commitment issued by International Funding and Insurance Associates in the form attached". This exhibit bore an endorsement signed by Roberts stating that the terms of the letter were agreed to and accepted by him on behalf of Imperial Commercial Corporation.

The record does not disclose the circumstances under which the check got from Roberts to Winters but, in any event, Winters presented it on December 8, 1969, to the Mechanics National Bank of Worcester, Massachusetts, which bank honored it on an endorsement which forms the crux of this lawsuit. The date "December 31, 1969" in the endorsement as initially typed on the back of the check by the defendant bank was partially obliterated by handwritten marks and language was added so that when paid by the Massachusetts bank the complete endorsement appears as follows:

"Earnest money deposit on loan to be made to Ambassador on Broadway, Inc. on Ambassador Hotel on or before ~~December 31, 1969~~ per agreement. International Funding & Insurance Associates by Arthur T. Winters, General Counsel and attorney Arthur T. Winters for preparation research and legal expenses."

All words following the typed phrase "per agreement" are handwritten. Immediately under this endorsement on the check there appears a small handwritten notation, as follows:

"Cashiers chks
"# F. C. 04634
"# F. C. 04635"

The check bore the foregoing endorsement and notation when on December 10, 1969, the defendant bank received it through ordinary banking channels and paid it.

Based upon the foregoing stipulation and exhibits the trial court made findings of fact and conclusions of law upon which it entered judgment for plaintiff for $30,000. Many of the factual findings are duplicative of those stipulated and will not be repeated. Additional findings and conclusions pertinent here are as follows:

"9. That the check was never endorsed by International Funding & Insurance Associates.

"10. That on or about December 10, 1969, with the back of the said check so changed, Arthur T. Winters presented the same for payment to the Mechanics National Bank of Worcester, Massachusetts for payment and took

in exchange the Mechanics National Bank's cashier's checks No. F. C. 04634 and F. C. 04635.

"11. That at the time Mechanics National Bank cashed the check it had actual knowledge from the check itself that the back of the check had been changed and that it had not been endorsed by International Funding & Insurance Associates, and the use and purpose of the check had been changed and that the check had been wrongfully converted to the personal use of Arthur T. Winters.

"12. That the Mechanics National Bank was not a holder in due course.

"13. That the check was received by defendant through ordinary banking channels on or about December 10, 1969, and although defendant had actual knowledge from the check itself that the same had been materially altered, and wrongfully converted to the personal use of Arthur T. Winters rather than the use and purpose for which the check was originally drawn, of which use and purpose the defendant had actual knowledge, the defendant wrongfully honored and paid the same through usual banking procedures.

"14. That the loan application for which the check was drawn as earnest money was denied by Internation Funding and Insurance Associates.

"15. That on account of defendants wrongful acts as aforesaid, the plaintiff and W. W. Hutto suffered a loss of and were damaged in the sum of $30,000.00, and that neither plaintiff nor Hutto have been repaid the money so wrongfully converted."

Before stating the contentions of the parties on appeal we should note the nature and character of the instrument in question and the law applicable thereto. In 10 Am. Jur. 2d, Banks, § 544, the following appears:

"A cashier's check is a bill of exchange, drawn by the bank upon itself, and is accepted by the act of issuance. While the only apparent basic or factual difference between a cashier's check and the ordinary check is that the ordinary check is drawn on one other than the drawer, while in a cashier's check both the drawer and the drawee are the same, there are certain differences, some radical, in the incidents and consequences of the two types of checks. A cashier's check is a primary obligation of the bank, rather than the depositor, as in the case of an ordinary check, and a promise to pay which ordinarily cannot be countermanded. It is issued by the authorized officer of the bank, directed to another person, evidencing the fact that the payee is authorized to demand and receive from the bank, upon presentation, the amount of money represented by the check. Cashiers' checks, from their peculiar character and general use in the commercial world, are regarded substantially as the money which they represent, a rule that is not extended to ordinary checks of the depositor drawn on his bank." (pp. 518-519.)

In *Scharz v. Twin City State Bank*, 201 Kan. 539, 441 P. 2d 897, we recognized that a cashier's check circulates in the commercial world as a primary obligation of the issuing bank, substituting for the money represented, and as such cannot be countermanded.

The foregoing traditional view of a cashier's check now finds expression in our uniform commercial code, adopted in this state and effective January 1, 1966 (K. S. A. 84-3-410 [1] and 84-4-303) and as a bill of exchange a bank's liability on such a check must be deemed subject to provisions of that code (K. S. A. Chap. 84).

We take note of certain UCC sections deemed pertinent by the parties: K. S. A. 84-1-103 provides:

> *"Supplementary general principles of law applicable.* Unless displaced by the particular provisions of this act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."

84-1-201 (43) defines an "unauthorized" signature as one made without actual implied or apparent authority, including a forgery.

84-3-105 provides:

> *"When promise or order unconditional.* (1) A promise or order otherwise unconditional is not made conditional by the fact that the instrument
>
> "(*a*) is subject to implied or constructive conditions; or
>
> "(*b*) states its consideration, whether performed or promised, or the transaction which gave rise to the instrument, or that the promise or order is made or the instrument matures in accordance with or 'as per' such transaction; or
>
> "(*c*) refers to or states that it arises out of a separate agreement or refers to a separate agreement for rights as to prepayment or acceleration. . . ."

84-3-116 states in part:

> *"Instruments payable to two or more persons.* An instrument payable to the order of two or more persons. . . .
>
> "(*b*) if not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them."

The official UCC comment (representing the opinion of the National Conference of Commissioners on Uniform State Laws and the American Law Institute) pertinent to 84-3-116 (*b*) is:

> "The second is payable only to A and B together, and as provided in the original section both must indorse in order to negotiate the instrument, although one may of course be authorized to sign for the other."

84-3-202 provides:

> *"Negotiation.* . . .
>
> "(4) Words of assignment, condition, waiver, guaranty, limitation or disclaimer of liability and the like accompanying an indorsement do not affect its character as an indorsement."

84-3-302 states in part:

*"Holder in due course.* (1) A holder in due course is a holder who takes the instrument

"(*a*) for value; and

"(*b*) in good faith; and

"(*c*) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. . . ."

84-3-304 provides:

*"Notice to purchaser.* (1) The purchaser has notice of a claim or defense if

"(*a*) the instrument is so incomplete, bears such visible evidence of forgery or alteration, or is otherwise so irregular as to call into question its validity, terms or ownership or to create an ambiguity as to the party to pay; or

"(*b*) the purchaser has notice that the obligation of any party is voidable in whole or in part, or that all parties have been discharged.

"(2) The purchaser has notice of a claim against the instrument when he has knowledge that a fiduciary has negotiated the instrument in payment of or as security for his own debt or in any transaction for his own benefit or otherwise in breach of duty.

"(4) Knowledge of the following facts does not of itself give the purchaser notice of a defense or claim

"(*b*) that it was issued or negotiated in return for an executory promise or accompanied by a separate agreement, unless the purchaser has notice that a defense or claim has arisen from the terms thereof;

"(*e*) that any person negotiating the instrument is or was a fiduciary. . . ."

84-3-307 is as follows:

*"Burden of establishing signatures, defenses and due course.* (1) Unless specifically denied in the pleadings each signature on an instrument is admitted. When the effectiveness of a signature is put in issue

"(*a*) the burden of establishing it is on the party claiming under the signature; but

"(*b*) the signature is presumed to be genuine or authorized except where the action is to enforce the obligation of a purported signer who has died or become incompetent before proof is required. . . ."

The official UCC comment on 84-3-307 includes the following:

". . . 'Presumption' is also defined in this Act (Section 1-201). It means that until some evidence is introduced which would support a finding that the signature is forged or unauthorized the plaintiff is not required to prove that it is authentic. The presumption rests upon the fact that in ordinary experience forged or unauthorized signatures are very uncommon, and normally any evidence is within the control of the defendant or more accessible to him. He is therefore required to make some sufficient showing of the grounds for his denial before the plaintiff is put to his proof. His evidence need not

be sufficient to require a directed verdict in his favor, but it must be enough to support his denial by permitting a finding in his favor. Until he introduces such evidence the presumption requires a finding for the plaintiff. Once such evidence is introduced the burden of establishing the signature by a preponderance of the total evidence is on the plaintiff."

84-3-403 provides in part:

"*Signature by authorized representative.* (1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority. . . ."

84-3-419 states:

"*Conversion of instrument.* . . .

"(4) An intermediary bank or payor bank which is not a depositary bank is not liable in conversion solely by reason of the fact that proceeds of an item indorsed restrictively (sections 84-3-205 and 84-3-206) are not paid or applied consistently with the restrictive indorsement of an indorser other than its immediate transferor."

84-3-407 (1) (*b*) provides that any alteration of an instrument is material only as it may change the contract of a party to the instrument, and further that no other alteration discharges any party and the instrument may be enforced according to its original tenor.

Essentially the several points on appeal presented by the appellant bank boil down to these: The trial court erred factually in finding the check was never endorsed by International Funding and that its proceeds were wrongfully converted to the use of Arthur T. Winters; it erred as a matter of law in concluding appellant had knowledge of these derelictions from the appearance of the check itself and that the check had been materially altered so as to affect its negotiability or validity.

Appellee responds the trial court found nothing factually beyond the stipulation and exhibits and the legitimate inferences to be drawn therefrom, which made it clear the check had never been endorsed by Interntaional, its use and purpose had been changed and it was converted to the personal selfish use of Winters; further, the trial court did not err in its legal conclusions.

As presented, the ultimate determinative question appears to be whether anything appearing on the check at the time it was honored by appellant altered its obligation to do so.

Appellee contends, and correctly so, that a trial court may take into account any inferences legitimately to be drawn from a stipulation or agreed statement of facts and included exhibits. Here, however, it appears the trial court went beyond the facts submitted

to it in the findings complained of. The bank was claiming under the signatures shown in the endorsement. By reason of 84-3-307, when effectiveness of those signatures became an issue, they were to be presumed genuine until proof was submitted to support a finding that they were not. Such evidence was lacking, indeed, the record is replete with undisputed evidence pointing the other way —that Winters was the agent and attorney of International and had authority to act for it. This authority was manifest in several of the exhibits: The letter first submitted to appellant wherein Winters was described as agent and attorney for International; the same label was repeated in the transmittal letter from Hutto to Roberts; and finally, as a payee in the check he was described as attorney for International. Where not specifically displaced, the UCC recognizes the continued viability of the common law relating to principal and agent (84-1-103). We see no evidence in the record which, under either our prior law or the UCC, would support a factual finding that Winters lacked authority to endorse the check for International and the statutory presumption of genuineness of the signatures as to authority becomes operative. Likewise, there was nothing in the evidence beyond speculation to support the finding that Winters wrongfully converted the proceeds of the check to his own use.

Appellee also relies on the deletion of the date "December 31, 1969" in the typed endorsement and the addition in it of the handwritten words as constituting knowledge to appellant of misappropriation destroying the validity of the check. The fact the endorsement made reference to another transaction in nowise affected its negotiability (84-3-105 [1]) nor did the addition of the handwritten language constitute a material alteration of the instrument as defined in 84-3-407.

Appellee put the check in commercial channels. Just who may have been guilty of defalcation to his detriment is not made clear from the record. In any event, Winters had authority to endorse the check. When returned to appellant the check contained no alteration affecting appellant's obligation under its initial transaction with appellee to honor it upon presentment, appellee meanwhile not having furnished appellant any reason to dishonor it. The trial court erred in holding otherwise.

The judgment is reversed with directions to enter judgment for appellant.

APPROVED BY THE COURT.