523 So.2d 1154 (1988)
James R. CROSBY, Vernon E. Crosby, Robert E. Crosby and Keith Crosby, Appellants,
v.
Gerald LEWIS, As Comptroller and Head of the Department of Banking and Finance, et al., Appellees.
No. 86-2131.
District Court of Appeal of Florida, Fifth District.
January 14, 1988.
Rehearing Denied April 27, 1988.
*1155 Charles E. Hoequist of Hoequist, Martin & Turner, Orlando, for appellants.
Elise M. Greenbaum, Orlando, for appellee Gerald Lewis.
William M. Rishoi of Snyderburn, Rishoi & Swann, Orlando, for appellee William M. Rishoi.
SHARP, Judge.
James Crosby, Vernon Crosby, Robert E. Crosby and Keith Crosby (the Crosbys) appeal from a non-final order of partial distribution of funds held by a receiver.[1] The Crosbys were allowed to intervene in the receivership as investors. They object to the provisions of the partial distribution plan which prevents them from participating in any disbursements until the proceeds of cashier's checks purchased by the Crosbys and delivered to the payee, but not cashed before the receivership was instituted, are paid into the receivership fund. We reverse.
The Crosbys were investors in Clara Lamstein's business operated under the name of Interamerican Business Consultants, Inc. The state comptroller instituted a suit in which Lamstein's and Interamerica's property and assets were swept under the control of a receiver on the grounds that the so-called investment business was a "Ponzi" or "pyramiding" scheme. When the Crosbys (as well as other investors) learned of the receivership, they sought to recoup some of their losses by ordering their respective banks to stop payment on outstanding checks.
The Crosbys purchased a total of $180,000.00 in cashiers checks payable to Lamstein from various banks and financial institutions. The checks were delivered to Lamstein as the Crosbys' investments in the business. Eighty thousand dollars of the cashiers checks were cashed and deposited *1156 into the business prior to the receivership. These funds are now part of the assets controlled by the receiver.
The remaining $100,000.00 in cashier's checks from the Crosbys were in Lamstein's possession, but had not been presented for payment to the respective bank-issuers, prior to the appointment of the receiver. The Crosbys alerted the banks not to pay the cashiers checks, and the banks issued stop-payment orders on their own outstanding cashiers checks. When presented for payment by the receiver, they dishonored them. The banks who issued the $100,000.00 in outstanding cashiers checks are not at this point parties to this lawsuit.
A cashiers check is a special kind of instrument, quite different than a normal check, designed to pass in commercial transactions as the next best thing to cash. It is a bill of exchange drawn by a bank or other issuer, on itself, and accepted in advance by the act of being issued.[2] The issuing bank assumes a position of primary liability to the payee,[3] and the purchaser/customer, here the Crosbys, do not have any right to order the bank to stop payment when the check is presented.[4]
Although there is no Florida case directly in point, a federal case applied the then newly adopted UCC in Florida, as the controlling law. In State of Pennsylvania v. Curtiss National Bank of Miami Springs, Florida, 427 F.2d 395 (5th Cir.1970), a Florida bank, which had issued a cashiers check payable to an agent for Bankers Allied Mutual Insurance Company, sought to defend against a receiver for Bankers on the ground that the consideration for the transaction which employed the cashier's check as payment had failed, and that Bankers (possibly involved in the theft of some securities, which formed part of the basis for the transaction) was not a holder in due course.
The court held the issuing bank liable on its cashiers check, pointing out that the issuance of a cashiers check is a separate, independent transaction from the contract or relationship between the purchaser of the cashiers check and the payee. If the issuance of the cashiers check were flawed in some way, for example, by failure of the purchaser to pay for the cashiers check or fraud in the procurement of its issuance by the purchaser, the issuing bank may successfully refuse payment to a non-holder in due course.[5] It distinguished Tropicana Pools v. First National Bank of Titusville, 206 So.2d 48 (Fla. 4th DCA 1968), because in Tropicana the issuing bank claimed failure of consideration for the issuance of the cashiers check against the payee of the check, who was not a holder in due course under pre-U.C.C. law.
The rule of law established in other jurisdictions is that fraud or failure of consideration regarding the underlying transaction between a purchaser and a payee of a cashiers check, is not a valid basis for the purchaser to require the issuing bank to stop payment or dishonor the check.[6] The rationale for this rule is the concept that cashiers checks must circulate like cash between parties.[7] If the validity of a cashiers check turns on the enforceability of another underlying transaction, cashiers checks would lose their character as cash substitutes. Thus, they should be treated as though the purchaser (Crosbys) handed cash to the payee (Lamstein), even though *1157 this result effectuates a fraud on the Crosbys.
However, some other jurisdictions also applying the UCC allow a bank to stop payment on a cashiers check issued by it, by asserting the purchaser's defenses if the payee or holder is not a holder-in-due-course. See, e.g., Banco Ganadero v. Agricola, S.A. Agua Prieta, Sonora, Mexico v. Society National Bank of Cleveland, 418 F. Supp. 520 (N.D.Ohio 1976); Laurel Bank & Trust Co. v. City National Bank of Connecticut, 33 Conn.Sup. 641, 365 A.2d 1222 (1976); Santos v. First National State Bank of New Jersey, 186 N.J. Super. 52, 451 A.2d 401 (A.D. 1982). Since there is no clear authority in Florida on this point, it will be one of first impression when it is ultimately presented.
These principles applied to this case mandate a modification of the appealed order of distribution. Through its order, the trial court is attempting to enforce payment of the cashiers checks into the receivership, but its efforts are directed at the wrong parties. The Crosbys are not liable on the cashiers checks and they have no power or control over the issuing banks.
The banks which issued the cashiers checks are primarily liable to the receiver, and by refusing to honor the checks, they have prima facie violated the duties imposed on them by section 673.413, Florida Statutes (1985). For this the receiver has a cause of action against the issuing banks, which may be pursued either in the context of this suit or in other lawsuits.[8] The issuing banks may have defenses, as suggested above. Only when they are made parties to this or other suits brought by the receiver, can the issue of enforceability of the cashiers checks be resolved, and the total amount of the Crosbys' investments or losses in Lamstein's fraudulent business be determined.[9]
In the interim, however, the Crosbys should not be denied full participation in the partial distribution to the extent of the $80,000.00 of their funds currently in the hands of the receiver. The order of partial distribution is modified by striking the limitations on the Crosbys' participation, consistent with this opinion.
REVERSED IN PART.
UPCHURCH, C.J., concurs.
COWART, J., concurs in part, dissents in part, with opinion.
COWART, Judge, concurring in part, dissenting in part.
I agree the Crosbys should be permitted to participate fully in the partial distribution plan for the $80,000 representing the Crosbys' funds currently in the hands of the receiver. However, the language in the majority opinion suggesting that a bank can never dishonor a cashier's check, and implying that the receiver has a cause of action against the bank, is unnecessary to reach this conclusion and with it I cannot agree.
While certainly a bank cannot properly dishonor its cashier's check as against a holder in due course, a bank has the right, if not a duty, to assist a customer who has purchased its cashier's check in preventing the payee of a cashier's check from successfully perpetrating a fraud on the bank's customer. After notice that the payee or bad faith holder of a cashier's check has obtained it from the purchaser (i.e. from the bank's customer) by fraud, the bank should not be required by law to act as an unwilling participant in the fraud. Neither morals, business and banking practices, the commercial code, nor good law requires this result. A receiver appointed by the court to control a party's assets stands in the shoes of the person for whom the receiver was appointed, which person in this case was without question attempting to defraud the bank's customer, hence the receiver was not a holder in due course.
NOTES
[1] Fla.R.App.P. 9.130(a)(3)(C)(iii).
[2] 10 Am.Jur.2d (1963) Banks § 642; 5 Fla.Jur.2d (1978) Banks § 207.
[3] U.C.C. 3-413, 3-409; §§ 673.413, 673.409, Fla. Stat. (1985).
[4] U.C.C. 4-303(1) 3-410; §§ 674.303(1), 673.410, Fla. Stat. (1985); J. White and R. Summers, Uniform Commercial Code, § 17-5, 680-683 (2d ed. 1980).
[5] The court did not base its decision on holder-in-due-course status, as that issue had not been presented earlier.
[6] See State ex rel. Chan Siew Lai v. Powell, 536 S.W.2d 14 (Mo. 1976); Meador v. Ranchmart State Bank, 213 Kan. 372, 517 P.2d 123 (1973); National Newark an Essex Bank v. Giordano, 111 N.J. Super. 347, 268 A.2d 327 (1970); Annot. 97 A.L.R.3d 714 (1980).
[7] Meador v. Ranchmart State Bank, 213 Kan. 372, 517 P.2d 123, 128 (1973); National Newark & Essex Bank v. Giordano, 111 N.J. Super. 347, 268 A.2d 327, 328 (1970).
[8] § 673.802(1)(a), Fla. Stat. (1985).
[9] Under certain circumstances, attorney's fees may be sought against banks. See Perkins State Bank v. Connolly, 632 F.2d 1306 (5th Cir.1980); §§ 57.105, 673.419, 674.208, Fla. Stat. (1985).