527 So.2d 240 (1988)
Michael R. PARKER, Appellant,
v.
Frank E. DUDLEY, Appellee.
No. 87-1707.
District Court of Appeal of Florida, Fifth District.
May 26, 1988.
Rehearing Denied June 29, 1988.
*241 J. Charles Ingram of Hannah, Marsee, Beik & Voght, P.A., Orlando, for appellant.
Kenneth A. Studstill, P.A., Titusville, for appellee.
PER CURIAM.
Appellant, Michael R. Parker, as creditor-mortgagee, sued appellee, Frank E. Dudley, as debtor-mortgagor, to foreclose a mortgage. Appellee purchased from his bank two cashier's checks payable to Michael R. Parker totalling $43,229.53 and mailed them, certified mail, return receipt requested, to appellant's attorney, as full payment. Because the tendered sum was not sufficient as full payment, appellant's attorney returned the checks, unendorsed, to appellee by certified mail, return receipt requested. Appellee filed a counterclaim against appellant in the mortgage foreclosure action alleging, in effect, that the cashier's checks were not received by appellee and that appellee suffered damages for loss of the proceeds of the cashier's checks as a result of the negligence of appellant's attorney in mailing them by certified mail, return receipt requested, rather than returning them by a more secure method. The letter and checks were apparently delivered to some undetermined adult residing at appellee's residence. The cashier's checks have not been presented to, or paid by, the drawee-drawer bank. The trial court denied appellant's motion for directed verdict as to the negligence counterclaim. The jury found negligence and the trial court offset the $43,229.53 against appellant's mortgage indebtedness.
*242 On this appeal, the parties argue the law about the presumption that properly addressed, stamped, and mailed letters were delivered, the necessity of gross negligence for a gratuitous bailee to be held liable, and the law relating to the effect of foreseeability of an intervening cause. These matters are not controlling. The essential question is whether appellant's attorney can be found negligent in the manner he chose to return the cashier's checks to appellee.
When a cashier's check requires an endorsement in order to be negotiated, as a matter of law, an attorney is not negligent in mailing it in a letter sent by the United States Postal Service, certified mail, return receipt requested. Appellant's motion for directed verdict as to appellee's counterclaim for negligence should have been granted.
Another reason, inherent in the facts, why appellee, as purchaser of the cashier's checks, is not entitled to recover a judgment, or offset, against the appellee/payee who never accepted or endorsed those checks, is because appellee has not suffered the loss of his $43,229.53. Appellee's counsel stated at oral argument before this court that the offset counterclaim for negligence was asserted against appellant because appellee's bank refused to reimburse appellee the amount of the cashier's checks based on its claim that the bank could not stop payment on the cashier's checks and thus, the bank would be legally required to pay a holder in due course if the checks were presented to the bank for payment. While we realize that the bank, not being a party to this litigation, is not legally bound by this opinion, neither are we bound to adjudicate or distort the law to fit or accommodate misimpressions of the parties or non-parties as to the law.
The unique character of a cashier's check[1] raises some good legal questions as to the right of a bank to stop payment on its cashier's check on its own initiative, or at its customer's request,[2] as against the original payee[3] or subsequent endorsees of the payee.[4] Those matters are not the exact issue here. In the present case, appellee purchased the cashier's checks from his bank and the appellee owns them and what they represent if they have not been "delivered" to the payee Michael R. Parker. The evidence in this case established that Parker did not accept the checks. Without regard to its technical form as being commercial paper, negotiable or nonnegotiable, a check or a promissory note, the bank's obligation on its cashier's checks was only to pay money to the appellant Michael R. Parker, as payee, or to his order. Paper payable to a named payee or order can only be negotiated by endorsement and delivery by the named payee. There is no negotiation of order paper until it is endorsed since negotiation is a transfer of an instrument in such form that the transferee becomes a "holder."[5] A forged endorsement fails to pass title. The transferee of order paper claiming through a forged instrument does not have "good title" to the instrument. No negotiation is effected by means of a forged endorsement, which has the same lack of effect as far as negotiation is concerned as though it had not been written on the instrument. Therefore, no transferee of order paper, claiming through a forged endorsement, can be a holder. If a person is not a "holder" then, of course, he can never be a "holder in due course."[6] Additionally, any person, even a "holder in due course," presenting an instrument for payment, must warrant that he has a good title *243 to the item.[7]
Armed with the testimony of appellant and appellant's attorney in this case, to the effect that the cashier's checks in question were never endorsed by appellant, appellee, in litigation with the bank, should be able to establish that appellee, as purchaser, is still the owner of the funds represented by the cashier's checks and is entitled to recover them from the bank and, because the necessary payee's endorsement would be missing (or any endorsement of the payee's name would be a forgery) the bank would not be liable to any persons presenting the cashier's checks for payment. Likewise and on the same evidence and for the same reason, the bank can successfully defend any action brought against it by an alleged "holder" of the cashier's checks by use of the same proof that the cashier's checks lack the genuine endorsement of the named payee.
Cash or money is property with a semi-intrinsic value[8] and that value is lost to all (but the issuing government) when the coin or bill is lost or physically destroyed as by fire or flood, etc. However, like all commercial paper, a cashier's check is intangible property and only represents or evidences legal title to, or the right to possess, property of intrinsic value, and neither the value or money or funds it represents nor the legal right to receive the funds or money it represents is "lost" when the paper evidence is lost or destroyed. The ardent desire of the "functional view" to consider a cashier's check as "the next best thing to cash"[9] cannot change this fact which, in a way, makes a cashier's check, like its sisters, traveler's checks and money orders, even "better than cash." The loss of the paper is not a loss of the funds the paper represents.
Appellant did not get the money or funds represented by the cashier's checks in this case; neither did the appellee "lose" the money or funds they represent; the money or funds evidenced or represented by the cashier's checks have not been lost  the drawer-drawee bank still has them. A bank is not entitled to keep all funds represented by cashier's checks when those checks are payable to a named payee who has never negotiated them by endorsing and delivering them into the stream of commerce and the checks themselves have been lost or destroyed. When the purchaser of cashier's checks can establish, as he can here, that no one can be a lawful holder of the checks because the named payee's endorsement will either be missing or a forgery, the owner should be able to recover the funds from the issuing bank.[10]
In summary, we relate and hold the following principles to be good law:
(1) There can be no valid "holder" of a cashier's check payable to a named payee when the endorsement of the named payee is missing or forged; therefore,
(2) If it can be established, as a matter of fact, that a lost cashier's check cannot be presented to the drawer-drawee bank for payment bearing the valid endorsement of a named payee, the bank can safely refund the funds represented by said check to the purchaser of the check; therefore,
(3) If the purchaser of a cashier's check can legally establish, as a matter of fact, that the check has not been, and cannot be, negotiated by the valid endorsement *244 of the named payee, the purchaser of the check is entitled to recover the funds represented by it from the drawer-drawee bank; therefore,
(4) The purchaser of a cashier's check, unendorsed by the named payee, suffers no economic or legal loss when such check is physically lost or destroyed, such as when the loss or destruction results from the alleged negligence of the named payee or of a third person; therefore,
(5) As a matter of law, it is not negligence to entrust a cashier's check which has not been endorsed by a named payee, to the United States Postal Service certified mail, return receipt requested.
Those portions of the Final Judgment crediting appellee with $43,229.53 against the sum found due appellant on the mortgage indebtedness are reversed and the cause remanded for further proceedings.[11]
REVERSED and REMANDED.
DAUKSCH, COBB and COWART, JJ., concur.
NOTES
[1] Before the Uniform Commercial Code was adopted, a cashier's check was considered a bill of exchange drawn by a bank upon itself and accepted in advance by the act of its issuance. Under U.C.C. § 3-118(a) (§ 673.118(1), Fla. Stat.), the draft drawn on the drawer is effective as a note.
[2] See generally R. Anderson, Uniform Commercial Code § 4-403:22, et seq. (3d ed. (1985).
[3] See Crosby v. Lewis, 523 So.2d 1154 (Fla. 5th DCA 1988).
[4] See Barnett Bank of Jacksonville, N.A. v. Warren Finance Inc., 13 F.L.W. 897 (Fla. 1st DCA Apr. 7, 1988).
[5] U.C.C. § 3-202 (§ 673.202(1), Fla. Stat.).
[6] U.C.C. § 3-302 (§ 673.302(1), Fla. Stat.).
[7] U.C.C. § 4-207(1)(a) (§ 674.207(1)(a), Fla. Stat.).
[8] For tax purposes money is considered intangible personal property the value of which is based on that which the property represents rather than its own intrinsic value. § 192.001(11)(b), Fla. Stat. However, the general public thinks of money as having intrinsic value and, as a practical matter, the public is correct.
[9] See footnotes 3, 4, and 5, supra.
[10] Obviously someone had some vague problem about this aspect of this case because, strangely, in paragraph 4 of the Final Judgment, appellee Dudley was ordered to assign any and all interest he has in the cashier's checks to appellant. The ultimate issue in this case appears to have been whether appellee, as purchaser of the cashier's checks, or appellant, as the named payee who refused to accept the checks, has the burden, under the facts of this case, to seek to recover the funds from the drawer-drawee bank. We hold it was the purchaser's obligation.
[11] This opinion is without prejudice to the reconsideration of attorney's fees due appellant's attorney in the mortgage foreclosure action which fees were reduced by a factor for result obtained. The determination of the amount of a reasonable attorney's fees for this appeal is left for the trial judge.