553 So.2d 1387 (1990)
FIRST AMERICAN BANK AND TRUST, Appellant,
v.
William M. RISHOI, Etc., et al., Appellees.
No. 88-2337.
District Court of Appeal of Florida, Fifth District.
January 4, 1990.
Jack A. Kirschenbaum of Wolfe, Kirschenbaum & Peeples, P.A., Cocoa Beach and Mark J. Sanchez of Hoequist, Hand, McIntee & Sanchez, Orlando, for appellant.
William M. Rishoi of Snyderburn, Rishoi & Swann, Winter Park, for appellees.
DANIEL, Chief Judge.
First American Bank and Trust appeals a summary judgment in favor of William M. Rishoi as receiver for Clara Lamstein and the business she operated under the name of Interamerican Business Consultants and Associates, Inc. This case is a logical sequel to our decision in Crosby v. Lewis, 523 So.2d 1154 (Fla. 5th DCA 1988).
In Crosby v. Lewis, the Crosbys had purchased $180,000 in cashier's checks, payable to Lamstein, from various banks and financial institutions. The checks were all delivered to Lamstein as investments. Lamstein's business was later closed down by the State on the ground that it was an illegal "ponzi" or pyramiding scheme. The assets of the business were placed in the control of Rishoi as receiver. Eighty thousand dollars of the cashier's checks from the Crosbys had been cashed and deposited by Lamstein prior to the receivership. However, one hundred thousand dollars in cashier's checks remained uncashed in Lamstein's possession. The Crosbys requested that the banks not pay the cashier's checks and the banks issued stop payment *1388 orders on the outstanding cashier's checks, subsequently dishonoring the checks when presented by the receiver for payment.
In its partial distribution plan, the trial court prevented the Crosbys from participating in any disbursements until the proceeds of the $100,000 worth of cashier's checks were paid into the receivership fund. Although the issuing banks were not parties to that action, this court stated:
The banks which issued the [cashier's] checks are primarily liable to the receiver, and by refusing to honor the checks, they have prima facie violated the duties imposed on them by section 673.413, Florida Statutes (1985). For this the receiver has a cause of action against the issuing banks, which may be pursued either in the context of this suit or in other lawsuits. The issuing banks may have defenses, as suggested above. Only when they are made parties to this or other suits brought by the receiver, can the issue of enforceability of the [cashier's] checks be resolved, and the total amount of the Crosbys' investments or losses in Lamstein's fraudulent business be determined. (Footnotes omitted.)
523 So.2d at 1157.
Rishoi thereafter instituted suit against First American Bank and Trust claiming that the bank had improperly refused to honor the cashier's checks. The court below concluded that the bank had no right to stop payment on the cashier's checks and entered summary judgment in favor of Rishoi.
On appeal, the bank argues that Rishoi is not a holder in due course and therefore it was justified in refusing to honor the cashier's checks. As the bank correctly asserts, a holder in due course is statutorily defined as a holder who takes an instrument for value, in good faith, and without notice that the instrument is overdue or has been dishonored or of any defense against or claim to it on the part of any person. See § 673.302(1), Fla. Stat. (1987). The bank further asserts that a person who is not a holder in due course takes an instrument subject to all valid claims to it on the part of any person. See § 673.306(1), Fla. Stat. (1987). The bank's position is that Rishoi did not take the cashier's checks for value or without notice of any defenses or claims and therefore the bank may rely on the Crosbys' defenses in refusing to pay the checks because the Crosbys have agreed to indemnify and defend the bank.
The bank acknowledges that a cashier's check presented by a holder in due course may not be countermanded after issue. See Pennsylvania v. Curtiss Nat. Bank of Miami Springs, Fla., 427 F.2d 395 (5th Cir.1970). It also acknowledges that cashier's checks are treated as the next best thing to cash in the business community. On public policy grounds, however, the bank urges that it should be able to assist its customers by stopping payment on a cashier's check which has been obtained from a customer by a criminal act.
In Warren Finance, Inc. v. Barnett Bank of Jacksonville, N.A., 552 So.2d 194 (Fla. 1989), the Florida Supreme Court recently held that, in accordance with common commercial practice and the use of a cashier's check as a cash substitute, any defenses which a bank may assert to avoid payment must be narrowly limited. The court concluded that, upon presentment for payment by a holder, a bank may only assert its real and personal defenses in order to refuse payment on a cashier's check issued by the bank. The bank may not, however, rely on a third party's defenses to refuse payment. The only inquiry a bank may make on presentment of a cashier's check is whether the payee or endorsee is in fact a legitimate holder, that is, whether the cashier's check is being presented by a thief or one who simply found a lost check, or whether the check has been materially altered. The court concluded that this approach maintains the validity and use of cashier's checks yet acknowledges the valid concerns of banks.
In the present case, the receiver was a legitimate holder and the bank had no real *1389 or personal defenses to assert against his claim for payment. Thus, the bank wrongfully dishonored its own obligation and is liable for payment. Accordingly, the trial court properly entered summary judgment in favor of the receiver.
The bank also argues that the trial court erred in entering summary judgment because the original documents (the cashier's checks), with accompanying authenticating affidavits, were not offered to the trial court nor was there an affidavit explaining their absence. We reject this argument. The parties filed a stipulation to which copies of the checks were attached. The parties later entered into a joint motion for summary judgment to which the stipulation was attached. The stipulation states that, after payment was stopped, the cashier's checks were returned to the receiver. The bank will not be permitted to enter into a stipulation and joint motion for summary judgment containing a copy of the checks in question and, on appeal, argue that the originals are missing from the record.
AFFIRMED.
GOSHORN, J., and EATON, O.H., Jr., Associate Judge, concur.