PER CURIAM.
Terri Tedder Earle seeks review of the trial court’s order of final summary judgment in favor of appellee, Southeast Bank, in this unjust enrichment case. We reverse.
Southwest Provisions, Inc. opened a checking account with Southeast Bank in Fort Myers on September 19, 1988. The next day, September 20, 1988, a $90,000.00 check was deposited to that checking account at a Miami branch of Southeast. In connection with this deposit, Southeast placed a hold on the checking account for only one day before it fully credited the account with the deposit. Two days later, Gregory Earle, the president of Southwest Provisions, Inc., drew checks on that checking account to pay for eleven cashier’s checks totaling $55,574.06. The cashier’s checks were drawn on Southeast. The corporate checks drawn on the checking account were honored because the $90,000.00 deposit had been credited to the account. Southeast’s cashier’s checks were issued before the $90,000.00 check had actually cleared.
In the late afternoon of the next day, September 23,1988, Southeast was notified that the $90,000.00 check had been dishonored by the drawee/payor bank. Southeast contacted Gregory Earle who advised that he had already delivered the cashier’s checks to the payees. Southeast honored the cashier’s checks, because it believed it had a legal obligation to pay the checks where there was no claim of fraud or forgery. Several of the cheeks, totaling $36,-765.74, were payable to C & S Bank as payments on commercial loans made to Southwest Provisions. The payment of those loans to Southwest Provisions by C & S had been personally guaranteed by appellant, Terri Earle (Earle), the wife of the president of Southwest Provisions.
Southeast sued Earle, alleging that she had been unjustly enriched in the amount of $36,765.74, because she was no longer liable as guarantor for the paid notes. According to the complaint, Southeast was entitled to stand in the shoes of C & S pursuant to the equitable doctrine of subro-gation. It sought to recover damages from her under the terms of the guarantee agreement. Southeast sought to recover damages of $36,765.74, prejudgment interest, attorney’s fees and costs.
Southeast moved for and was granted summary judgment based on equitable sub-rogation and was awarded $36,765.74. The court reserved jurisdiction to tax attorney’s fees and costs. A subsequent order awarding attorney’s fees and costs to Southeast was entered from which Earle appealed. Upon motion by Earle, the appeals were consolidated by this court.
Southeast argues that it is entitled to be subrogated to the rights of C & S pursuant to section 674.407, Florida Statutes (1989). Section 674.407 provides that the payor bank shall be subrogated to the rights of any holder in due course against the drawer or maker on the cashier’s checks. This would entitle Southeast rights of subrogation against itself. Therefore, section 674.407 is not applicable in this instance.
*1074 The courts of Florida have held that the doctrine of equitable subrogation
was created to afford relief where one is required to pay a legal obligation that ought to have been met, either wholly or partially, by another. Its purpose is to do complete justice between the parties, without regard to form, by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it.
12 Fla.Jur.2d Contribution, Indemnity and Subrogation § 18; United States Fidelity & Guaranty Co. v. Bennett, 96 Fla. 828, 119 So. 394, 396 (1928); Ulery v. Asphalt Paving, Inc., 119 So.2d 432, 436 (Fla. 1st DCA 1960). Florida courts have also held that there can be no legal subrogation where the party seeking subrogation is not under an obligation to make the payment. See Boley v. Daniel, 72 Fla. 121, 72 So. 644 (1916).
However, the requirement that the party seeking subrogation must be under an obligation to make the payment is a requirement, which, if not present, appears to preclude the application of the doctrine, regardless of the equities of the case. See, e.g., Goodwin v. Schmidt, 149 Fla. 85, 5 So.2d 64 (1941) (paying without obligation, as mere volunteer, not entitled to subrogation); Photomagic Industries, Inc. v. Broward Bank, 526 So.2d 136 (Fla. 3d DCA), review dismissed, 534 So.2d 400 (Fla.1988) (same).
It cannot be said that Southeast was making payment on the cashier’s checks as a mere volunteer in this case, because the only inquiry a bank can make upon presentment of a cashier’s check is whether the payee or endorsee is in fact a legitimate holder. See Warren Finance, Inc. v. Barnett Bank of Jacksonville, N.A., 552 So.2d 194 (Fla.1989). Technically, however, Southeast was not paying an obligation owed by Earle, because Earle’s obligation was discharged upon her payment of the cashier’s checks to C & S. Southeast was paying its own obligation when it made payment on the cashier’s checks presented by C & S. Consequently, Southeast is not entitled to be subrogated to the rights of C & S under the loan documents.
Attorney’s fees and costs were awarded to Southeast pursuant to the loan documents also. Accordingly, the summary judgment in favor of Southeast is reversed, as well as the award of attorney's fees and the case is remanded for the trial court to enter judgment in favor of Earle.
Reversed and remanded.
SCHEB, Acting C.J., RYDER and PATTERSON, JJ., concur.